NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12224


AIDS SUPPORT GROUP OF CAPE COD, INC.  vs.  TOWN OF BARNSTABLE
& others.[1]



Barnstable.    February 14, 2017. - June 14, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Hypodermic Needle.



Civil action commenced in the Superior Court Department on
November 10, 2015.

A motion for a preliminary injunction was heard by Raymond
P. Veary, Jr., J., and the case was reported to the Appeals
Court by Robert C. Rufo, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Bennett H. Klein (Andrew Musgrave also present) for the
plaintiff.
Charles S. McLaughlin, Jr., Assistant Town Attorney (Ruth
J. Weil, Town Attorney, also present) for the defendants.
Andrew H. DeVoogd, Kate F. Stewart, & Tiffany M. Knapp, for
Massachusetts Infectious Diseases Society & others, amici
curiae, submitted a brief.

_____

[1] Board of health of Barnstable and director of public
health of Barnstable.

LENK, J.  Prior to 2006, G. L. c. 94C, § 27, provided criminal penalties for the possession, delivery, sale, or exchange of hypodermic needles without a prescription.  In 2006, the Legislature amended the statute to regulate only the sale of such needles, thereby decriminalizing, inter alia, the possession of hypodermic needles.  See St. 2006, c. 172, §§ 2, 3 (2006 act).

Since 2009, AIDS Support Group of Cape Cod, Inc. (ASGCC), has been operating a free hypodermic needle "access" program in Hyannis, a village in Barnstable.  It provides clean syringes without charge to those who use intravenous drugs, in order to prevent the spread of diseases such as human immunodeficiency virus (HIV) and hepatitis C.  Claiming that ASGCC, which did not first seek local approval of its program, is in violation of two State statutes, G. L. c. 94C, § 27, and G. L. c. 111, § 215, the town of Barnstable[2] (town) ordered the cessation of the program.

General Laws c. 94C, § 27, in essence prohibits the sale of hypodermic needles to those under eighteen, while G. L. c. 111, § 215, authorizes the Department of Public Health (DPH) to operate nonsale needle exchange programs with local approval.  The town maintains that the statutes provide the only two legal

---

[2] For convenience, we refer to the defendants the town of Barnstable, its board of health, and its director of public health collectively as the "town."

methods for the sale and distribution of hypodermic needles in Massachusetts:  sale by pharmacists and distribution by a locally approved DPH program.  ASGCC contends that neither statute regulates the private nonsale distribution of hypodermic needles.

In response to the town's cease and desist order, ASGCC brought an action in the Superior Court, seeking injunctive relief as well as a declaration that its nonsale needle "access" program is not prohibited by either statute.  After enjoining the town preliminarily from enforcing its cease and desist order, the judge reported the question without decision to the Appeals Court, and we allowed ASGCC's application for direct appellate review.  We conclude that neither statute prohibits the subject program and, accordingly, that the town's cease and desist order cannot stand.[3]

---

[3] We acknowledge the amicus brief submitted by Massachusetts Infectious Diseases Society; Massachusetts Public Health Association; Association of Behavioral Health; Harvard Pilgrim Health Care; Blue Cross and Blue Shield of Massachusetts; Baystate Health, Inc.; National Alliance of State and Territorial AIDS Directors; Partners HealthCare System, Inc.; UMass Memorial Health Care, Inc.; Greater Lawrence Family Health Center; Lynn Community Health Center; Outer Cape Health Services, Inc.; Duffy Health Center; Fenway Health; Manet Community Health Center, Inc.; Massachusetts Association of Alcoholism and Drug Abuse Counselors; Massachusetts Association of Community Health Workers; Tapestry Health Systems, Inc.; Victory Programs; Multicultural AIDS Coalition; AIDS Project Worcester, Inc.; MassEquality.org, the Campaign For Equality; New England AIDS Education and Training Center; Massachusetts

1.  <u>Background and prior proceedings</u>.[4]  ASGCC is a nonprofit organization that operates programs in Hyannis, Provincetown, and Falmouth for those suffering from drug addiction and its attendant illnesses.  At its site in Hyannis, ASGCC distributes free hypodermic needles and syringes as part of a comprehensive program of services for people who use intravenous drugs.  Because sharing needles is a leading cause of the spread of blood-borne diseases, notably HIV and hepatitis C, ASGCC seeks to ensure that its clients use a clean needle every time they inject opiates or other drugs.  ASGCC therefore conducts an initial assessment of each person who requests needles or other services and provides only as many needles as staff believe will be necessary so that the client will be able to use a clean needle for each injection.[5]  ASGCC provides a collection

---

Chapter of The National Association of Social Workers; The Dimock Center; Justice Resource Institute; John Snow, Inc.; North Shore Health Project; Community Research Initiative of New England; and Center For Human Development, Inc.

[4] The facts are taken from the agreed-upon statement of facts within the parties' joint motion to report the case the Appeals Court, and we reference additional, uncontroverted facts where necessary to supplement the discussion.

[5] In his decision allowing the motion for a preliminary injunction filed by AIDS Support Group of Cape Cod, Inc. (ASGCC), the Superior Court judge noted ASGCC's report that, in its then most recent fiscal year, it had issued 112,604 syringes and received back 115,209 syringes, "for a rate of return of 102 [per cent]."  He noted also:

receptacle for the return of used needles at its facility, encourages clients to return needles, and gives each client an individual "sharps container" for storing used needles before they are returned, but does not require a return of the same number of needles distributed in order to provide additional needles.[6]  It also offers additional services for users of intravenous drugs, such as medical case management, peer support, housing, nutritional programs, testing for diseases such as HIV, and risk reduction strategies.  ASGCC does not sell hypodermic needles, is not operating a program implemented by DPH, and has not sought approval from the town to operate its programs.

In 2015, the town discovered improperly discarded

"Both sides have responded to [the risk of improperly discarded needles].  The [t]own has installed sharps receptacles at four of its five fire stations. . . . ASGCC, in addition to distributing individual sharps containers and maintaining its own disposal kiosk, has also conducted sweeps of its own neighborhood to locate and secure discarded materials.  Both sides have also shown a willingness to expand these efforts and to coordinate their resources in doing so (e.g.[,] installing secure sharps receptacles in public comfort facilities, increasing public awareness and education).  This willingness, to the court's view, shows the most promise, in both focus and scope, to address the [t]own's foremost concern."

[6] Consistent with ASGCC's own "harm reduction" goal of clients using a clean needle every time they inject, the Department of Public Health (DPH) also does not require programs contracted under its auspices, pursuant to G. L. c. 111, § 215, to insist on a one-to-one exchange of needles in order for a client to participate in the program.

hypodermic needles in public places and traced the origin of at least some of these needles to ASGCC. Soon thereafter, the town ordered[7] ASGCC to cease distributing hypodermic needles at its Hyannis site, citing violations of G. L. c. 94, § 27, and G. L. c. 111, § 215. The order indicated in this regard that, in failing to obtain approval of its program from the town council, ASGCC had violated G. L. c. 111, § 215, and that its program also was not in compliance with G. L. c. 94, § 27, which permits only licensed pharmacists or wholesale druggists to sell hypodermic needles.

As noted, on November 10, 2015, ASGCC commenced an action in the Superior Court seeking a declaration that the town's order was in contravention of Massachusetts law because nothing in the language of G. L. c. 94C, § 27, or G. L. c. 111, § 215, prohibits private individuals or organizations from distributing free hypodermic needles. ASGCC also sought equitable relief to preliminarily and permanently enjoin enforcement of the order.

After an evidentiary hearing, a Superior Court judge preliminarily enjoined the town from enforcing the cease and desist order against ASGCC or otherwise interfering with ASGCC's

---

[7] The town of Barnstable (town) issued two orders, described, collectively, as the "order." The Barnstable police department hand-delivered the first order on September 22, 2015, which stated that it was a "warning." The Barnstable director of public health mailed ASGCC a letter and a second order on September 23, 2015.

distribution of hypodermic needles. The parties thereafter jointly requested that the case be reported for determination by the Appeals Court, pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996). The judge allowed that motion, and we allowed ASGCC's application for direct appellate review.

2. Discussion. The question before us is whether G. L. c. 94C, § 27, or G. L. c. 111, § 215, prohibits private individuals or organizations from distributing free hypodermic needles. ASGCC maintains that we need look no further than the plain language of the statutes, given that neither contains language relevant to ASGCC's program or services. The town argues that, notwithstanding the plain statutory language, the legislative history indicates that the Legislature intended G. L. c. 111, § 215, to provide the sole means by which an organization may operate free needle distribution programs outside the requirements of G. L. c. 94C, § 27. According to the town, were we to conclude otherwise, only DPH-implemented exchange programs would require local approval, while similar private programs would be unregulated, a result the town considers absurd. We disagree. The statutory language is clear that programs such as ASGCC's are not prohibited, the legislative history does not evidence an intent to the contrary, and interpreting the two statutes to allow private entities to operate nonsale needle exchange programs does not give rise to

an absurd result.

        a.  Statutory language.  Our primary goal in interpreting a statute is to effectuate the intent of the Legislature, and "the statutory language is the principal source of insight into legislative purpose."  Bronstein v. Prudential Ins. Co., 390 Mass. 701, 704 (1984).  Therefore, "[w]here the language of a statute is clear and unambiguous, it is conclusive as to legislative intent."  Worcester v. College Hill Props., LLC, 465 Mass. 134, 138 (2013), quoting Martha's Vineyard Land Bank Comm'n v. Assessors of W. Tisbury, 62 Mass. App. Ct. 25, 27-28 (2004).  Accordingly, turning first to the plain language of the statutes, it is clear that, by their words alone, neither G. L. c. 94C, § 27, nor G. L. c. 111, § 215, proscribes ASGCC's activities.

        General Laws c. 94C, § 27, regulates only the sale of hypodermic needles and syringes.  It provides:

        "Hypodermic syringes or hypodermic needles for the administration of controlled substances by injection may be sold in the commonwealth, but only to persons who have attained the age of [eighteen] years and only by a pharmacist or wholesale druggist licensed under the provisions of [G. L. c. 112], a manufacturer of or dealer in surgical supplies or a manufacturer of or dealer in embalming supplies.  When selling hypodermic syringes or hypodermic needles without a prescription, a pharmacist or wholesale druggist must require proof of identification that validates the individual's age."

At the time of the cease and desist orders in 2015, G. L. c. 111, § 215, stated, in relevant part:

> "The department of public health is hereby authorized to promulgate rules and regulations for the implementation of not more than ten pilot programs for the exchange of needles in cities and towns within the commonwealth upon nomination by the department.  Local approval shall be obtained prior to implementation of each pilot program in any city or town."[8]

In sum, the plain language of the statutes simply does not proscribe free distribution of hypodermic needles by a private individual or organization, such as ASGCC, that does not operate a program implemented by DPH.  See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978).

b.  Legislative history.  The town asserts, however, that the plain language does not, in this case, accurately reflect the intent of the Legislature, and that other canons of statutory construction must be used in order to avoid an absurd result.  See Sullivan v. Brookline, 435 Mass. 353, 360 (2001) ("A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result").  The legislative history

---

[8] General Laws c. 111, § 215, was amended in 2016, but those amendments, while removing any restriction on the number of DPH programs, did not expand the provision to reference anything other than DPH programs.  The statute currently provides:

> "The department of public health may implement needle exchange programs for the exchange of needles in cities and towns.  Prior to implementation of a needle exchange program, approval shall be obtained from the board of health in the hosting city or town."

of G. L. 94C, § 27, and G. L. c. 111, § 215, the town maintains, indicates a legislative intent to restrict access to hypodermic needles to one of two methods:  sale by pharmacists or distribution by a DPH-sponsored needle exchange program.  Where "the language of the statute is plain and unambiguous, . . . legislative history is not ordinarily a proper source of construction."  Hoffman v. Howmedica, Inc., 373 Mass. 32, 37 (1977).  Nonetheless, as the town argues, we also must "construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd results."  Canton v. Commissioner of the Mass. Highway Dep't, 455 Mass. 783, 791 (2010).  Therefore, we consider the town's assertion that the successive legislative decisions to regulate the sale of hypodermic needles, and also to regulate free distribution through DPH programs, indicate a clear intent to proscribe other types of free distribution, and that allowing a private program like ASGCC's to exist, outside the ambit of DPH-implemented programs, would be absurd.

The town asserts that, by amending G. L. c. 94C, § 27, in 2006, the Legislature "anointed" pharmacists as the "gatekeepers" of "sale and distribution" of hypodermic needles. The town contends further that, by enacting these amendments to G. L. c. 94C, § 27, while retaining G. L. c. 111, § 215, the Legislature intended the provisions of G. L. c. 111, § 215, to regulate any organization that wished to distribute free

hypodermic needles, outside the regulations on sales set forth in G. L. c. 94C, § 27. In addition, the town points to prior, unsuccessful efforts to amend G. L. c. 94C, § 27, before implementation of the 2006 act, subsequent unsuccessful efforts to amend G. L. c. 111, § 215, and the 2016 expansion of G. L. c. 111, § 215, as evidence of legislative intent to restrict nonsale possession of hypodermic needles in enacting the 2006 act. In particular, in the town's view, the expansion of G. L. c. 111, § 215, in 2016, confirms that, in 2006, the Legislature did not authorize the establishment of private programs that distribute free hypodermic needles but, rather, limited needle exchange programs to those implemented by DPH.[9]

The legislative history of G. L. c. 94C, § 27, does not support the town's contention that that statute, read in

---

[9] In support of this argument, the town relies extensively on a Superior Court judge's interpretation of G. L. c. 111, § 215, in Holyoke City Council vs. Holyoke, Mass. Super. Ct., No. 12-0837 (Hampden County Mar. 14, 2016), which the town argues represents the proper analysis of the interplay between the two statutes that regulate hypodermic needles. The issue before the Superior Court in that case, however, was whether a town council or town board of health was the proper "local authority" to approve DPH-sponsored needle exchange programs, a question quite distinct from the one before us. The judge himself indicated as much in a decision on a motion for reconsideration, stating that he was not confronted with the question whether G. L. c. 111, § 215, is applicable to private entities. Since the decision in that case, the Legislature has amended G. L. c. 111, § 215, to clarify that a local board of health is now the approving authority for DPH programs. See St. 2016, c. 133, § 65.

conjunction with the decision not to repeal G. L. c. 111, § 215, regulates nonsale distribution. Prior to 2006, G. L. c. 94C, § 27, provided criminal penalties for the possession, delivery, sale, or exchange of hypodermic needles without a prescription. See G. L. c. 94C, § 27 (a), as amended through St. 1993, c. 224, § 2 ("No person, not being a [licensed professional] shall have in his possession a hypodermic syringe [or] hypodermic needle. . ." [emphasis added]); G. L. c. 94C, § 27 (b), as amended through St. 1993, c. 224, § 2 ("No such syringe, needle or instrument shall be delivered or sold to, or exchanged with, any person except a [licensed professional]" [emphases added]). In enacting "An Act relative to HIV and Hepatitis C prevention," St. 2006, c. 172, §§ 2, 3, the Legislature removed from G. L. c. 94C, § 27, all references to possession, delivery, and exchange, choosing to retain only the word "sold." See G. L. c. 94C, § 27, as appearing in St. 2006, c. 172, § 3. Given the elimination of all references to possession, delivery, and exchange, we cannot infer, as the town suggests, that the Legislature intended the current version of G. L. c. 94C, § 27, to continue to regulate possession, delivery, and exchange. "Where the Legislature has deleted . . . language, apparently purposefully, the current version of the statute cannot be interpreted to include the rejected requirement. Reading in language that the Legislature chose to remove . . . violates

basic principles of statutory construction and impermissibly interferes with the legislative function."  Commonwealth v. Porges, 460 Mass. 525, 530 (2011), quoting Kenniston v. Department of Youth Servs., 453 Mass. 179, 185 (2009).[10]

The conclusion that G. L. c. 94C, § 27, applies only to the sale of hypodermic needles is required also by the statutory and common-law definitions of "sale" and "distribution."  General Laws c. 94C, § 1, defines the word "[d]istribute" as "to deliver other than by administering or dispensing a controlled substance."  While "sale" has no statutory definition, it is commonly understood as meaning "[t]he transfer of property or title for a price."  Commonwealth v. Keefner, 461 Mass. 507, 513 n.3 (2012), quoting Black's Law Dictionary 1454 (9th ed. 2009). "Sell" is defined as "[t]o transfer (property) by sale." Black's Law Dictionary (10th ed. 2014).  Sale thus is legally

---

[10] The town points to language in three prior proposed amendments to G. L. c. 94C, § 27, over the course of ten years, that would have exempted from criminal penalties the distribution of hypodermic needles by any program, whether private or public.  The town maintains that these efforts demonstrate the Legislature's consideration and rejection of the concept of allowing private organizations to distribute hypodermic needles.  See 1995 Senate Doc. No. 554; 1997 Senate Doc. No. 517; 1999 Senate Doc. No. 537.  We do not consider proposed legislation that was never enacted as being indicative of legislative intent; rather, we look to the statutory language that the Legislature in fact adopted.  See, e.g., Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 162-164 (1998).  In any event, certain of the proposed exemptions were included in G. L. c. 94C, § 27 (f) (now repealed).

distinct from distribution.  See Keefner, supra ("[T]he term 'sell' or 'sale' is narrower than the term 'distribution' and we agree with the judge that they are not synonymous").  The town's contention that G. L. c. 94C, § 27, codified the role of pharmacists as gatekeepers for both "sale and distribution" of hypodermic needles is accordingly unavailing.

The town also claims that cross references contained within prior versions of G. L. c. 94C, §§ 27 and 27A, and G. L. c. 111, § 215, provide evidence of legislative intent that G. L. c. 111, § 215, continues to apply to nonsale programs, such as the ASGCC program.  This contention is unpersuasive, for the reason, if no other, than that the 2006 act eliminated the very cross references upon which the town relies.

In previous versions of the statutes, portions of the language of G. L. c. 94C, § 27, and G. L. c. 111, § 215, did reference each other.  Prior to 2006, G. L. c. 94C, § 27, included subsection (f), which explicitly exempted from criminal liability the possession of needles without a prescription "as part of a pilot program approved by [DPH] in accordance with [G. L. c. 111, § 215]."  The 2006 act repealed G. L. c. 94C, § 27 (f).  See St. 2006, c. 172, § 15.  With respect to currently effective legislation, the 2006 act added a new section, G. L. c. 94C, § 27A, which requires DPH, along with the Department of Environmental Protection, to design and implement

programs for the collection of used hypodermic needles; the section does not reference programs implemented by DPH.[11]

In short, following the extensive amendments of the 2006 act, decriminalizing the possession of hypodermic needles without a prescription, G. L. c. 94C, § 27, no longer contains any reference to programs implemented by DPH under the authority granted to it in G. L. c. 111, § 215. Although, as the town argues, the statutes "relate to the same subject matter," Canton, 455 Mass. at 791, we do not read words into a statute that the Legislature saw fit to remove. See Porges, 460 Mass. at 530. The removal from G. L. c. 94C, § 27, of all statutory references to G. L. c. 111, § 215, is consistent with the legislative purpose of decriminalization; once criminal penalties had been eliminated, the exception to criminal liability for possession of needles acquired through a DPH program was no longer needed. Nothing in these cohesive changes reveals a legislative intent that G. L. c. 111, § 215, would restrict possession of needles acquired by any means other than sales pursuant to G. L. c. 94C, § 27. Indeed, the proponents of the 2006 act stated, in no uncertain terms, that "[w]ithout

---

[11] The 2006 act also contained a single reference to programs established under G. L. c. 111, § 215, in a section that was not codified, which required DPH to "perform a comprehensive study and review of the existing needle exchange programs established pursuant to [G. L. c. 111, § 215]." St. 2006, c. 172, § 15.

providing the opportunity for a clean needle it's like spreading disease and condoning it."  State House News Service (Senate Sess.), June 1, 2006 (statement by Sen. Steven Tolman).  See State House News Service (Senate Sess.), June 1, 2006 (statement by Sen. Robert O'Leary) (any policy based on restricting access to needles is "fundamentally flawed").

In an effort to buttress its contention that the Legislature intended to retain nonsale restrictions, the town calls attention to two unsuccessful efforts to amend G. L. c. 111, § 215, subsequent to enactment of the 2006 act,[12] and also to the later expansion of G. L. c. 111, § 215, in 2016. None of these efforts sheds any light on the Legislature's intent in 2006, when it enacted the now controlling G. L. c. 94C, § 27, "An Act relative to HIV and Hepatitis C prevention."  See Commonwealth v. Chamberlin, 473 Mass. 653, 660-662 (2016), quoting Massachusetts Comm'n Against Discrimination v. Liberty Mut. Ins. Co., 371 Mass. 186, 194 (1976) ("the views of a subsequent [Legislature] form a hazardous basis for inferring the intent of an earlier one"); Cook v. Patient Edu, LLC, 465 Mass. 548, 555 n.14 (2013) ("We do not draw conclusions concerning the intent of the Legislature based on the failure to enact a subsequent amendment").  Nor

_____

[12] See Proposed Amendment No. 77 to 2016 House Doc. No. 3944; 2016 Senate Doc. No. 2305, § 87.

does the 2016 legislation amending G. L. c. 111, § 215, advance the town's argument in this regard. That legislation removed restrictions on the number of programs that DPH may implement, changed the status of such programs from "pilot" to permanent, and clarified that the local approval needed for such programs was to come from boards of health. The amendment is silent, as before, as to any restrictions on private providers of the same service. To the extent that this 2016 legislation in any way illuminates the Legislature's intent ten years before, it suggests an ongoing legislative effort to expand, rather than limit, nonsale access to hypodermic needles.

Finally, we do well to note that the town's position stands in tension with the basic and fundamental legal principle that an activity not prohibited or restricted by law is lawful. See 1 W. Blackstone, Commentaries *45. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . ." Bordenkircher, 434 U.S. at 363. Concluding that ASGCC's services are unlawful under either G. L. c. 94C, § 27, or G. L. c. 111, § 215, would be tantamount to doing just that.

3. _Conclusion_. The matter is remanded to the Superior Court for entry of a declaration that G. L. c. 94C, § 27, and G L. c. 111, § 215, do not prohibit ASGCC from engaging in free distribution of hypodermic needles, and an injunction

permanently enjoining enforcement of the town's order to cease and desist.

<u>So ordered</u>.