LENK, J.
*1187 **786 This case requires us to construe an exemption to the Massachusetts overtime statute. The overtime statute generally requires employers to pay an overtime premium to employees who work more than forty hours in a given week. G. L. c. 151, § 1A. The statute, however, "shall not be applicable to any **787 employee who is employed ... by an employer licensed and regulated pursuant to [G. L. c. 159A]," which governs motor vehicle common carriers of passengers in Massachusetts. See G. L. c. 151, § 1A (11) ; G. L. c. 159A.
The plaintiffs are bus drivers whose employer, the defendant Eastern Bus Company, Inc. (Eastern Bus), provides two types of transportation: charter service, for which Eastern Bus must hold a license under the common carrier statute; and transportation of pupils between home and school, which does not constitute charter service. See G. L. c. 159A, § 11A. The bus drivers perform both of these services. They claim that they are entitled to overtime payment. Their argument is twofold.
The bus drivers first assert that Eastern Bus is only "licensed and regulated" under the common carrier statute during the hours when it is providing charter service. The exemption, then, only applies during those hours, and not when Eastern Bus is providing school transportation. The bus drivers further argue that this overtime exemption should be interpreted in the same manner as two similarly structured Federal overtime exemptions. These Federal exemptions, for certain employees of air and rail common carriers, are not applied to employees who spend a substantial amount of time on work that is unrelated to the statutory provisions referenced in the exemptions. If a similar interpretation were adopted here, the bus drivers argue, the common carrier overtime exemption would not apply to them, because they spend a substantial amount of time on work that is not governed by the common carrier statute.
The plain language of the overtime statute, however, exempts any employee whose employer is *1188 licensed and regulated pursuant to the common carrier statute, rather than any employee who performs a service for which a license is required under the common carrier statute. See G. L. c. 151, § 1A (11) (common carrier overtime exemption). "Courts must follow the plain language of a statute when it is unambiguous and when its application would not lead to an absurd result, or contravene the Legislature's clear intent" (citation and quotations omitted). Commonwealth v. Kelly, 470 Mass. 682, 689, 25 N.E.3d 288 (2015). Proper construction of the exemption therefore depends on whether Eastern Bus is "licensed and regulated pursuant to" the common carrier statute at all times, or only during the hours when it provides charter service. Because the common carrier statute imposes certain continuous obligations on charter service providers, Eastern Bus is "licensed and regulated" at all times. **788 Additionally, neither legislative history nor a comparison with Federal law indicates that the common carrier overtime exemption was modeled on the Federal overtime exemptions that the bus drivers argue are apt analogues. Although the Massachusetts overtime statute was generally based on the Federal overtime requirement, there is inadequate basis upon which to conclude that this exemption was modeled on any particular Federal provision. Accordingly, and absent any indication that doing so would fly in the face of legislative intent or produce an absurd result, the statutory language must be construed as written. We thus conclude that the bus drivers are not entitled to overtime payment because their employer is licensed and regulated pursuant to the common carrier statute.[4]
1. Background. a. Statutory framework. Enacted in 1960, the overtime statute was intended to be "essentially identical" to the 1938 Federal Fair Labor Standards Act (FLSA). See Swift v. AutoZone, Inc., 441 Mass. 443, 447, 806 N.E.2d 95 (2004), quoting Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 40 (1st Cir. 1999). The overtime statute "aims to reduce the number of hours of work, encourage the employment of more persons, and compensate employees for the burden of a long workweek." Mullally v. Waste Mgt. of Mass., Inc., 452 Mass. 526, 531, 895 N.E.2d 1277 (2008). Like the FLSA, the overtime statute requires employers to provide a premium to covered employees who work more than forty hours in a given week. See 29 U.S.C. § 207(a)(1) ; G. L. c. 151, § 1A. Employers must compensate employees for those hours at one and one-half times their regular hourly wage. G. L. c. 151, § 1A.
Both the FLSA and the Massachusetts counterpart contain certain exemptions to the overtime requirement. See 29 U.S.C. § 213(b) ; G. L. c. 151, § 1A. As relevant here, the Massachusetts overtime statute exempts "any employee who is employed ... by an employer licensed and regulated pursuant to [G. L. c. 159A]." G. L. c. 151, § 1A (11). General Laws c. 159A (common carrier statute) is administered by the Department of Public Utilities (DPU) and governs, among others, motor vehicle common carriers that provide charter bus service. See G. L. c. 159A, §§ 10, 11A.[5]
**789 To understand the parties' arguments, it is helpful to review the common carrier statute to which the relevant overtime exemption refers. Section 11A of the common carrier statute sets forth DPU's authority over charter service providers, and defines "[c]harter service" as "the transportation of groups of persons who, pursuant to a common purpose and under a single contract, and at a fixed charge for the vehicle have acquired the exclusive use of the vehicle for the duration of a particular trip or tour." See G. L. c. 159A, § 11A. "Charter service" does not include "the transportation of school children to and from school pursuant to a written contract with a municipality or a municipal board or with the authorities of such school," provided that certain conditions are met (school transportation).[6] Id.
The common carrier statute requires that charter service providers obtain a license from DPU "certifying that the rendering of such service is consistent with *1189 the public interest, that public convenience and necessity require it and that the applicant is fit, willing and able properly to perform such service." Id. DPU also may promulgate relevant rules, orders, and regulations. Id. See 220 Code Mass. Regs. § 155.02 (2008). DPU may suspend or revoke a charter service provider's license for cause. See G. L. c. 159A, § 11A.
b. Factual history. "Because this is an appeal from an allowance of summary judgment, we set forth the undisputed material facts." Kiribati Seafood Co. v. Dechert LLP, 478 Mass. 111, 112, 83 N.E.3d 798 (2017). Eastern Bus is a Massachusetts corporation that operates school buses in the Commonwealth. The defendant Charles Winitzer established Eastern Bus in 1997, and is the owner and president of the company. The plaintiffs represent a class of bus drivers employed by Eastern Bus who provide both charter service and school transportation, and who have not received overtime payment for hours over forty worked per week.
**790 In 1998, DPU granted Eastern Bus a charter service license pursuant to § 11A of the common carrier statute, subject to "such rules and regulations as [DPU] may from time to time prescribe, and to the right of [DPU] to suspend or revoke the [l]icense for violations" of the common carrier statute or regulations promulgated thereunder. The company has held its charter service license without interruption since it was first licensed in 1998. The license states that Eastern Bus must "at all times maintain standards and conduct which in the opinion of [DPU] are satisfactory to establish proof of its continuing fitness, willingness and ability to perform the service authorized." Eastern Bus incontestably provides some charter service, although the parties dispute how much of the company's work constitutes charter service.
Eastern Bus also has contracted with a number of Massachusetts municipalities and school authorities to transport pupils to and from school. In addition to this daily transport of pupils, Eastern Bus also provides transportation to and from school extracurricular activities, pursuant to contracts with a number of municipalities and school authorities. Eastern Bus characterizes this work as "charter service" as defined under the common carrier statute. See G. L. c. 159A, § 11A. The bus drivers contend that these extracurricular trips constitute school transportation and are thus outside the definition of "charter service."[7] See id.
c. Prior proceedings. The bus drivers filed a complaint in the Superior Court, asserting a violation of the overtime statute because Eastern Bus does not provide overtime payment to drivers who work more than forty hours per week.[8] The bus drivers sought class certification; damages and restitution for overtime payment allegedly due; statutory trebling of all wage-related damages; attorney's fees and costs; and any other relief that they are due.
Eastern Bus filed a motion for judgment on the pleadings, arguing that, under the common carrier overtime exemption, the **791 bus drivers are not entitled to overtime pay because their employer is licensed and *1190 regulated pursuant to the common carrier statute. See G. L. c. 151, § 1A (11). The bus drivers moved for class certification.[9] A Superior Court judge concluded that, although Eastern Bus holds a charter service license under the common carrier statute, the corporation does not enjoy "a blanket exemption for all [c]ompany employees under [ § 1A (11) ], regardless of the particular duties they perform" (emphasis in original). The judge denied Eastern Bus's motion for judgment on the pleadings, and certified the bus drivers as a class.
After discovery, the parties filed cross motions for summary judgment on the overtime claim. A hearing on these motions was conducted by a different Superior Court judge. Eastern Bus continued to argue that the common carrier overtime exemption applies to the bus drivers. The bus drivers sought overtime payment for all hours worked over forty per week, or, alternatively, all hours over forty per week spent performing services that are not governed by the common carrier statute, in other words, school transportation.[10]
The second judge concluded that the "earlier determination must stand: the overtime exemption does not apply, and the bus driver plaintiffs are now entitled to summary judgment on their claim for overtime wages." Eastern Bus sought leave to file an interlocutory appeal to the Appeals Court on the ruling; a single justice of that court allowed the motion. The bus drivers filed a notice of cross appeal from the Superior Court judge's order insofar as it does not state that they are entitled to overtime payment for all hours over forty worked per week.[11]
The proceedings in the Superior Court on the remaining issues were stayed pending resolution of the appeal on Eastern Bus's **792 liability for overtime payment. We then transferred the case from the Appeals Court to this court on our own motion.
2. Discussion. "Our review of a motion judge's decision on summary judgment is de novo, because we examine the same record and decide the same questions of law." Kiribati Seafood Co., 478 Mass. at 116, 83 N.E.3d 798. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted). Massachusetts Insurers Insolvency Fund v. Smith, 458 Mass. 561, 564, 940 N.E.2d 385 (2010). "In a case like this one where both parties have moved for summary judgment, the evidence is viewed in the light most favorable to the party against whom judgment [has entered]," in this instance Eastern Bus (citation omitted). Boazova v. Safety Ins. Co., 462 Mass. 346, 350, 968 N.E.2d 385 (2012).
*1191 We are called upon for the first time to construe G. L. c. 151, § 1A (11), the common carrier overtime exemption. Under this exemption, the overtime statute "shall not be applicable to any employee who is employed ... by an employer licensed and regulated pursuant to [G. L. c. 259A]," the common carrier statute. See G. L. c. 151, § 1A (11). The bus drivers argue that Eastern Bus is only "licensed and regulated" under the common carrier statute during the hours when it provides charter service, while Eastern Bus contends that it is continuously "licensed and regulated" under the common carrier statute.
a. The common carrier statute. "[W]e consider the several statutes in question, not in isolation but in relation to each other." Pereira v. New England LNG Co., 364 Mass. 109, 115, 301 N.E.2d 441 (1973). Accordingly, we must read the overtime and common carrier statutes together and "give rise to a consistent body of law." Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 247, 606 N.E.2d 1336 (1993). Because proper construction of the common carrier overtime exemption turns on what it means to be "licensed and regulated pursuant to" the common carrier statute, we begin with that statute. See G. L. c. 151, § 1A (11) ; G. L. c. 159A.
Section 11A of the common carrier statute requires charter service providers to obtain a license which "shall remain in force" unless it is revoked. See G. L. c. 159A, § 11A. Charter service **793 providers therefore are continuously "licensed" under the common carrier statute, because their license does not lapse during the hours when they are not providing charter service.
Additionally, the common carrier statute and regulations promulgated thereunder impose certain obligations on charter service companies, which are in effect at all times. For example, under § 11A, a company holding a charter service license cannot change its "address, [its] place of business, the place where [its] buses or any of them are usually garaged, or [its] base of operations from one city or town to another," without DPU approval. Id. It would be nonsensical to prohibit a charter service provider from enacting such a change only during the hours when it actively is providing charter service. See Sperounes v. Farese, 449 Mass. 800, 807, 873 N.E.2d 239 (2007) (reading of provision that would "negate the words entirely" was absurd).
Furthermore, under § 8 of the common carrier statute, no vehicle can be used in charter service unless DPU has granted a permit for that vehicle. See G. L. c. 159A, § 8. In order for a vehicle to obtain a permit, DPU must find that the vehicle is "equipped to comply with the rules and regulations promulgated by" DPU. G. L. c. 159A, §§ 8, 11A. DPU's regulations, promulgated pursuant to the common carrier statute, impose certain requirements as to charter service vehicles, including that they "be maintained in a safe and sanitary condition and shall, at all times, be subject to the inspection of" DPU. 220 Code Mass. Regs. § 155.02(22). Additionally, DPU can revoke or suspend a vehicle permit "at any time when it appears to [DPU] that the motor vehicle covered by such permit does not conform to said rules and regulations." G. L. c. 159A, § 8. DPU's power to inspect a charter service vehicle or to revoke a vehicle permit at any time demonstrates that its regulatory authority over charter service providers is constant.[12]
*1192 Other regulations governing common carriers-which are **794 promulgated under the common carrier statute-similarly impose certain obligations that are continuously in effect. For example, one regulation provides that a common carrier's "accounts, records and memoranda ... shall be kept in such form as may be prescribed by [DPU]," and "shall be subject to inspection at any time." See 220 Code Mass. Regs. § 155.02(8). Under another regulation promulgated pursuant to the common carrier statute, "[a]ll maintenance records, repair records, and memoranda ... shall be preserved for a period of [twelve] months unless [DPU] shall otherwise provide." 220 Code Mass. Regs. § 155.02(22). Charter service companies are required consistently to maintain their documents in a particular way and over a specific period of time, and those documents are subject to inspection by DPU at any time. These requirements are in effect at all hours, regardless of whether any one driver is in the middle of a charter route.
The bus drivers argue that Eastern Bus is not "licensed and regulated pursuant to" the common carrier statute during the hours when the drivers provide school transportation. Their argument is based on the definition of charter service under the common carrier statute, which excludes "the transportation of school children to and from school pursuant to a written contract with a municipality or a municipal board or with the authorities of such school." See G. L. c. 159A, § 11A. As relevant here, this language simply provides that furnishing school transportation does not require a charter service license under the common carrier statute; it does not mean that a company providing that service ceases to be licensed and regulated under the common carrier statute. A bus company may be "licensed and regulated pursuant to" the common carrier statute while simultaneously providing an additional service that is not subject to the statute. As a result, we conclude that Eastern Bus is constantly "licensed and regulated pursuant to" the common carrier statute, regardless of whether the bus drivers are providing school transportation or charter service in any given hour.
b. The common carrier overtime exemption. Having determined that Eastern Bus is an employer that is "licensed and regulated pursuant to" the common carrier statute, G. L. c. 151, § 1A (11), we turn to the language of the overtime exemption at **795 issue. "Our primary goal in interpreting a statute is to effectuate the intent of the Legislature ...." AIDS Support Group of Cape Cod, Inc. v. Barnstable, 477 Mass. 296, 300, 76 N.E.3d 969 (2017). "The language of the statute is the primary source of insight into" this intent. Commonwealth v. Millican, 449 Mass. 298, 300, 867 N.E.2d 725 (2007). "Where the language is clear and unambiguous, it is to be given its 'ordinary meaning."' Commonwealth v. Mogelinski, 466 Mass. 627, 633, 1 N.E.3d 237 (2013), quoting Commonwealth v. Brown, 431 Mass. 772, 775, 730 N.E.2d 297 (2000). The court must construe clear and unambiguous statutory language as written, unless doing so would produce an absurd outcome or otherwise frustrate legislative intent. See Worcester v. College Hill Props., LLC, 465 Mass. 134, 138, 987 N.E.2d 1236 (2013) ; *1193 Champigny v. Com monwealth, 422 Mass. 249, 251, 661 N.E.2d 931 (1996).
The overtime statute requires employers to pay overtime to covered employees for hours worked over forty per week. G. L. c. 151, § 1A. The common carrier exemption provides that the overtime statute "shall not be applicable to any employee who is employed ... by an employer licensed and regulated pursuant to [G. L. c. 159A]." "Licensed and regulated" modifies "an employer." See Commonwealth v. LeBlanc, 475 Mass. 820, 822, 62 N.E.3d 34 (2016) ("court uses standard rules of grammar when interpreting statutory language"); Globe Newspaper Co. v. Boston Retirement Bd., 388 Mass. 427, 432, 446 N.E.2d 1051 (1983) ("the general rule of statutory as well as grammatical construction [is] that a modifying clause is confined to the last antecedent" [citation omitted] ). Under the exemption's plain meaning, then, employees of Eastern Bus are not entitled to overtime payment.
"When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute: otherwise the different sections of the same statute might be so construed as to be repugnant, and the intention of the [L]egislature might be defeated." Leary v. Contributory Retirement Appeal Bd., 421 Mass. 344, 347, 657 N.E.2d 224 (1995), quoting Negron v. Gordon, 373 Mass. 199, 201, 366 N.E.2d 241 (1977). Accordingly, "[w]e ... do not read statutory language in isolation," LeClair v. Norwell, 430 Mass. 328, 333, 719 N.E.2d 464 (1999), but, instead, examine the common carrier overtime exemption in the context of the overtime statute in its entirety.
Some exemptions to the overtime statute turn on the nature of an individual employee's work. See, e.g., G. L. c. 151, § 1A (10) (exempting any employee who is employed as seaman). Others **796 define exempted employees by reference to their employer. See, e.g., G. L. c. 151, § 1A (17) (exempting any employee employed in nonprofit school). Yet other exemptions depend on the type of compensation that an employee receives. See, e.g., G. L. c. 151, § 1A (1) (exempting any employee employed "as a janitor or caretaker of residential property, who when furnished with living quarters is paid a wage of not less than thirty dollars per week"); G. L. c. 151, § 1A (3) (exempting any employee employed "as a bona fide executive ... earning more than eighty dollars per week").
The Legislature plainly knew how to draft an overtime exemption that would apply narrowly to specific employees depending on their occupation, or even their compensation. This indicates that a provision phrased as an exemption for any employee of a particular type of employer was designed to be just that. The drafters of the overtime statute could have opted to exempt only employees who perform work for which a license is required under the common carrier statute, or who dedicate a certain number of hours per week to such labor. "If that was the legislative intent, the wording of the statute could have easily reflected it. It does not" (footnote omitted). Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 802, 784 N.E.2d 1085 (2003). Reading the overtime statute as a whole indicates that the Legislature intended to exempt from the overtime requirement any employee of an employer that is licensed and regulated under the common carrier statute. See G. L. c. 151, § 1A (11).
The bus drivers argue, nonetheless, that the amount of their work that is subject to the common carrier statute determines whether the exemption applies to them. They ask us to adopt an interpretation that the United States Department of Labor has given to similarly structured overtime exemptions for certain airline and *1194 railroad employees. See 29 C.F.R. §§ 786.1, 786.150 (2011). This interpretation takes into account the percentage of an employee's hours that are spent on work related to the statutory provisions referenced in the overtime exemptions. See 29 C.F.R. §§ 786.1, 786.150. The bus drivers' approach, however, would require us to read "licensed and regulated" to modify not "an employer," but, rather, the service that an employee provides. See G. L. c. 151, § 1A (11) (exempting employees of "an employer licensed and regulated pursuant to" common carrier statute); Globe Newspaper Co., 388 Mass. at 432, 446 N.E.2d 1051 (modifying clause confined to last antecedent). **797 As discussed, Eastern Bus remains "licensed and regulated pursuant to" the common carrier statute at all times, regardless of the transportation services its drivers perform during any given hour. Statutory text that reasonably can be construed in multiple ways is ambiguous, Falmouth v. Civil Serv. Comm'n, 447 Mass. 814, 818, 857 N.E.2d 1052 (2006), but the common carrier overtime exemption supports only one interpretation. The exemption's plain language must be effectuated unless, as the bus drivers contend, this would contradict legislative intent. See Champigny, 422 Mass. at 251, 661 N.E.2d 931 ("[W]hen a literal reading of a statute would be inconsistent with legislative intent, we look beyond the words of the statute" [citation omitted] ).
We are mindful that, as a remedial measure, the overtime statute must be broadly construed in light of its purpose, which is in part to compensate for a long work week. See Meikle v. Nurse, 474 Mass. 207, 210, 49 N.E.3d 210 (2016), quoting Case of Sellers, 452 Mass. 804, 810, 898 N.E.2d 494 (2008) ; Mullally, 452 Mass. at 531, 895 N.E.2d 1277. "But this purpose should not be used as a means of disregarding the considered judgment of the Legislature" in crafting statutory exemptions. Globe Newspaper Co., 388 Mass. at 436, 446 N.E.2d 1051. "Where, as here, the language of the statute is clear, it is the function of the judiciary to apply it, not amend it." Commissioner of Revenue v. Cargill, Inc., 429 Mass. 79, 82, 706 N.E.2d 625 (1999). Without a clear indication that the Legislature based the common carrier overtime exemption on the Federal air and rail overtime exemptions, Federal construction of those exemptions cannot be imported into Massachusetts law.
c. Legislative history. A statute's meaning "must be reasonable and supported by the ... history of the statute." Mogelinski, 466 Mass. at 633, 1" url="https://cite.case.law/citations/?q=1%20N.E.3d%20237">1 N.E.3d 237, quoting Wright v. Collector & Treas. of Arlington, 422 Mass. 455, 457-458, 663 N.E.2d 572 (1996). Legislative records show that the common carrier overtime exemption was not included in the original proposal for the overtime statute; it was proposed and adopted shortly before the bill's passage. See 1960 Senate J. 1487-1488. Apart from this fact, available legislative history is silent as to the common carrier overtime exemption, its proper construction, or whether it was modeled on any Federal overtime exemption. See id.; 1960 Senate Doc. No. 1, at 22; 1960 Senate Doc. No. 754, at 400.
d. Guidance from Federal law. The FLSA, which served as a model for the overtime statute, at times may shed light on the legislative intent behind a specific provision of the overtime statute. See Swift, 441 Mass. at 447, 806 N.E.2d 95. Not every overtime exemption, **798 however, has a Federal analogue. Indeed, the Massachusetts statute contains certain exemptions, apart from the exemption at issue here, that are absent from the FLSA. See, e.g., G. L. c. 151, § 1A (2) (exempting golf caddies); G. L. c. 151, § 1A (13) (exempting any employee employed in gasoline station). Compare 29 U.S.C. § 213(a), (b) *1195 (FLSA contains no analogous exemptions for these occupations).
We examine the two statutes to determine whether, as the bus drivers claim, the common carrier overtime exemption was modeled on the Federal air and rail overtime exemptions. As discussed infra, these exemptions apply to different types of workers and share none of the same terms. Recognizing both that the exemptions at issue all apply to employees of common carriers, and that they are structurally similar, these commonalities alone are insufficient to demonstrate that the common carrier overtime exemption was based on the Federal air and rail overtime exemptions. As a result, the statutory language remains "the primary source of insight into the intent of the Legislature." See Millican, 449 Mass. at 300, 867 N.E.2d 725.
The bus drivers argue that the common carrier exemption was modeled on the FLSA exemptions for employees of any "carrier by air subject to the provisions of title II of the Railway Labor Act" and any "employer engaged in the operation of a rail carrier subject to part A of subtitle IV of Title 49." See 29 U.S.C. § 213(b)(2), (3). They point out that exempt employees are determined by the statutory authority governing their employer. In other words, these exemptions are structurally similar to the common carrier overtime exemption, which exempts employees whose employer is licensed and regulated pursuant to the common carrier statute. See G. L. c. 151, § 1A (11).
The bus drivers further ask us to adopt the United States Department of Labor's enforcement policy regarding these exemptions. Each exemption refers to the statutory authority that governs the relevant employers; the Department of Labor applies the exemptions only to employees who spend at least eighty per cent of their hours on labor that is related to that statutory authority. See 29 C.F.R. §§ 786.1, 786.150. Analogizing from this framework, the bus drivers argue that the common carrier overtime exemption does not apply to them, because they spend less than eighty per cent of their hours performing services that are governed by the common carrier statute.
As the bus drivers note, in Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 170, 172, 732 N.E.2d 289 (2000), we embraced the United States **799 Department of Labor's interpretation of the FLSA when construing a different exemption to the overtime statute. In considering the exemption for any individual "employed ... as a bona fide executive, or administrative or professional person," we were guided by Federal regulations concerning the FLSA exemption for "any employee employed in a bona fide executive, administrative, or professional capacity." Id. at 171-172, 732 N.E.2d 289. See G. L. c. 151, § 1A (3). In that case, however, the Federal and Massachusetts overtime exemptions covered the same people, and referred to them using the same terms: "bona fide executive," "administrative," and "professional." See Goodrow, supra at 171, 732 N.E.2d 289. Indeed, the two exemptions had "nearly identical" language. See id.
Goodrow is inapposite here because the Federal and State exemptions at issue in this case do not apply to the same people. The Federal exemptions affect employees working for Federally regulated airlines and railroads, while the common carrier overtime exemption concerns employees of State-regulated bus companies. Compare 29 U.S.C. § 213(b)(2), (3), with G. L. c. 151, § 1A (11).[13] Indeed, the Massachusetts *1196 overtime statute already contains an exemption for the same employees who are covered by the Federal air and rail overtime exemptions. See G. L. c. 151, § 1A (8) (exempting any "employee of an employer subject to the provisions of [part A of subtitle IV of Title 49] or subject to title II of the Railway Labor Act").[14] By contrast, the FLSA contains no exemption for common carrier bus companies such as Eastern Bus. See generally 29 U.S.C. § 213(a), (b).[15] **800 Additionally, the Federal exemptions at hand are not "nearly identical" linguistically to the common carrier overtime exemptions. See Goodrow, 432 Mass. at 171, 732 N.E.2d 289. See also Scaccia v. State Ethics Comm'n, 431 Mass. 351, 354-355, 727 N.E.2d 824 (2000) (consulting Federal law for guidance on how to construe "virtually identical" Massachusetts statute). The Legislature did not borrow Federal language in drafting the common carrier overtime exemption. Although structurally similar, the exemptions use none of the same terms.[16]
We previously have diverged from Federal law when construing a Massachusetts statute that was based on a Federal statute, but included an exemption with unique language. In Globe Newspaper Co., 388 Mass. at 433 n.11, 446 N.E.2d 1051, we analyzed the public records statute, which, "[i]n a general way," "is patterned on the Federal Freedom of Information Act." Both the Massachusetts and Federal statutes contain exemptions for personnel and medical files. Id. at 431, 433, 446 N.E.2d 1051. Given, however, that the terminology and punctuation vary slightly between the Massachusetts and Federal exemptions, we held that these distinctions evince "a decision to reject the legal standards embodied or implicit in the language of the Federal statute." Id. at 432-433, 446 N.E.2d 1051. Accordingly, "[w]e conclude[d] that this comparison with the Federal exemption is strong evidence that we should follow the plain language of our exemption." Id. at 434, 446 N.E.2d 1051. So too here. Indeed, unlike in this case, the provisions compared in Globe Newspaper Co., supra at 431, 433, 446 N.E.2d 1051, shared language and concerned the same subject matter.
In sum, there is little reason to conclude that the Legislature modeled the common carrier overtime exemption on the Federal air and rail overtime exemptions, or intended it to be administered in the same *1197 manner as those exemptions. There is thus no sound basis to justify a departure from the clear statutory language in favor of a Federal enforcement policy that is not binding on this court. See Goodrow, 432 Mass. at 170, 732 N.E.2d 289 ("we may look to interpretations of analogous Federal statutes for guidance, ... but we are not bound by them").[17] **801 e. Avoidance of absurd result. The bus drivers also argue that the plain language of the common carrier overtime exemption could not reflect the Legislature's intent, because its application would produce an absurd or unreasonable outcome. The court will not effectuate the unambiguous, plain language of a statute if doing so would lead to an absurd outcome. Worcester, 465 Mass. at 138, 987 N.E.2d 1236. That, however, is not the case here.
The bus drivers first argue that the plain-language reading of the overtime exemption is absurd because it would allow a company to avoid paying its employees overtime by simply procuring a common carrier license. DPU will grant such a license, however, only to companies that are fit to provide common carrier services, and then only if "public convenience and necessity require" those services. See G. L. c. 159A, §§ 7, 11A. Additionally, because the FLSA contains no exemption for common carrier bus companies, a company could not skirt its obligation to pay overtime under Federal law simply by obtaining a common carrier license. See generally 29 U.S.C. § 213(a), (b). Of greater concern is the bus drivers' second basis for claiming that this reading of the common carrier overtime exemption produces an absurd result: all common carrier employees, even those who do not operate buses or perform any duties related to the common carrier statute, are exempt from the overtime requirement. Although an overtime exemption for employees such as janitors and clerical workers may well be a harsh outcome, it is not thereby rendered absurd.
The situation here is unlike cases where we have concluded that plain statutory language would produce an absurd result. An interpretation that causes a statute to "have ... no practical effect," Champigny, 422 Mass. at 251, 661 N.E.2d 931, is absurd. The overtime statute remains in effect, however, and nonexempt employees plainly are entitled to overtime payment, regardless of whether common carrier employees are exempted. See G. L. c. 151, § 1A. Nor does our reading of the exemption "negate the words entirely," Sperounes, 449 Mass. at 807, 873 N.E.2d 239, because it simply gives the **802 exemption's words their literal meaning. Construing the exemption as written also does not "achieve an illogical result." See AIDS Support Group of Cape Cod, Inc., 477 Mass. at 301, 76 N.E.3d 969, quoting Sullivan v. Brookline, 435 Mass. 353, 360, 758 N.E.2d 110 (2001).
If applying the exemption's plain language "thwart[ed] the [overtime] statute's intended purpose," Commonwealth v. Diggs, 475 Mass. 79, 83, 54 N.E.3d 1115 (2016), doing so would be absurd. See *1198 Zimmerling v. Affinity Fin. Corp., 86 Mass. App. Ct. 136, 143-144, 14 N.E.3d 325 (2014) (result that would "run contrary to" statute's "enumerated purpose" was absurd). That, however, is not the case here. We are mindful that the overtime statute is intended both to deter and to compensate for long work weeks, Mullally, 452 Mass. at 531, 895 N.E.2d 1277, but those overarching goals do not preclude the Legislature from creating statutory exemptions. See Globe Newspaper Co., 388 Mass. at 436, 446 N.E.2d 1051 ("We agree that the dominant purpose of the [public records] law is to afford the public broad access to governmental records.... But this purpose should not be used as a means of disregarding the considered judgment of the Legislature that the public right of access should be restricted in certain circumstances"). An overtime exemption for all common carrier employees irrespective of their job duties, while potentially creating hardship, is not an absurd result.
"We cannot interpret a statute so as to avoid injustice or hardship if its language is clear and unambiguous and requires a different construction" (citation omitted). Pierce v. Christmas Tree Shops, Inc., 429 Mass. 91, 93, 706 N.E.2d 633 (1999). The decision whether to exempt all common carriers employees from the overtime requirement as a matter of State law is a policy determination within the province of the Legislature. The defendants' brief observes that employees who are not members of the plaintiff class are "likely entitled to overtime compensation under Federal law"; we are unable to determine, on the facts before us, the accuracy of this assertion. In the event that this is not so, the Legislature may wish to revisit what could be an unnecessarily sweeping overtime exemption. Because the outcome is not absurd, however, we are constrained to interpret the common carrier overtime exemption as written.
3. Conclusion. The allowance of the bus drivers' motion for summary judgment and the denial of Eastern Bus's motion for summary judgment are reversed. The matter is remanded to the **803 Superior Court for further proceedings consistent with this opinion.
So ordered.

We acknowledge the amicus brief submitted by School Transportation Association of Massachusetts, Inc.

The common carrier statute also regulates companies that operate buses along fixed and regular routes, providing "what might be described as public service transportation." Goodwin v. Department of Pub. Utils., 351 Mass. 25, 27, 217 N.E.2d 782 (1966). See G. L. c. 159A, § 1. In addition to charter service, § 11A of the common carrier statute applies to "school service" and "special service." See G. L. c. 159A, § 11A. The plaintiffs' claims in this case involve charter service; as such, the other services subject to the common carrier statute are not relevant here.

General Laws c. 159A, § 11A, excludes from the definition of charter service "the transportation of school children to and from school pursuant to a written contract with a municipality or a municipal board or with the authorities of such school, provided that the charges for such transportation are borne by such municipality or municipal board or school and provided, further, that no special charges for such transportation are made by the municipality or municipal board or such school on account of the children transported."

The parties contest the proper characterization of this transportation because it affects the number of hours that the bus drivers spend on work that is charter service, and that therefore is subject to G. L. c. 159A, § 11A. Because our resolution of this matter does not turn on the percentage of the bus drivers' work that is dedicated to services subject to the common carrier statute, we do not reach the question whether transportation for school extracurricular activities falls under that statute.

The bus drivers twice amended their complaint to include a retaliation claim for the termination of named plaintiff Lyonel Telfort. That claim has been stayed and is not before us.

The bus drivers also moved for partial summary judgment, arguing that introduction of Eastern Bus's DPU license converted Eastern Bus's motion for judgment on the pleadings into a motion for summary judgment. The judge disagreed, and dismissed the bus drivers' motion for summary judgment without prejudice.

Eastern Bus acknowledges that school transportation does not constitute charter service, but maintains that this work is governed by the common carrier statute. Because we determine that the bus drivers are exempt from overtime regardless of the percentage of their labor that is subject to the common carrier statute, we need not resolve the question whether school transportation is outside the scope of that statute.

The bus drivers further argue that the judge made a factual error and overstated the percentage of charter jobs performed by Eastern Bus in 2015 for nonmunicipal clients. We do not reach this issue, because resolution of this case does not depend on the percentage of charter jobs that Eastern Bus has provided to nonmunicipal customers.

The bus drivers point to a 1947 Attorney General advisory opinion analyzing DPU's authority to regulate a vehicle used for both charter service and school transportation. The Attorney General concluded that DPU "has no authority to deal with the vehicle" during the hours that it was used for school transportation, based on the exclusion of school transportation from the definition of charter service under the common carrier statute. Rep. A.G., Pub. Doc. No. 12, at 43 (1947). We conclude that § 8 of the common carrier statute supersedes this opinion to the extent that they conflict. See Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 126 n.9, 20 N.E.3d 229, quoting Spaniol's Case, 466 Mass. 102, 106, 992 N.E.2d 1028 (2013) (although we grant deference to formal Attorney General advisory opinions, "the duty of statutory interpretation ultimately is for the courts").

Additionally, employees of Federally regulated airlines and railroads are unique in that they are subject to mediation over issues such as wages, as part of a system aimed at "minimizing interruptions in the [n]ation's transportation services by strikes and labor disputes." See 45 U.S.C. §§ 151, 153, 183, 185 ; International Ass'n of Machinists, AFL-CIO v. Central Airlines, Inc., 372 U.S. 682, 687, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963). In considering the FLSA in 1937, Congress heard extensive testimony on this labor dispute resolution system. See, e.g., Statements of R.V. Fletcher, Counsel for Association of American Railroads, & Charles M. Hay, Attorney for Railway Executives' Association, Joint Hearings Before the Senate Committee on Education and Labor and the House Committee on Labor, 75th Cong., on Senate Bill No. 2475 and House Bill No. 7200 (1937).

The Federal air and rail common carrier exemptions apply to any employee of a "carrier by air subject to the provisions of title II of the Railway Labor Act" and any "employer engaged in the operation of a rail carrier subject to part A of subtitle IV of Title 49." See 29 U.S.C. § 213(b)(2), (3).

The FLSA previously contained an exemption for local motor bus companies providing public transportation, which likely would not have applied to Eastern Bus. See Conley v. Valley Motor Transit Co., 139 F.2d 692, 693, 694 (6th Cir. 1943) (local motor bus exemption did not apply to companies that charge fares on mileage basis); G. L. c. 159A, § 11A (charter service companies in Massachusetts charge fares on mileage basis).

Indeed, only one word-"to"-appears in all three of them. See 29 U.S.C. § 213(b)(2), (3) ; G. L. c. 151, § 1A (11).

In the alternative, Eastern Bus urges us to look for guidance to a Federal overtime exemption for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service" under the Motor Carrier Act. See 29 U.S.C. § 213(b)(1). We observe that this provision also is not an apt analogue, due, inter alia, to its linguistic distinctiveness; unlike the common carrier overtime exemption, it defines the exemption by describing the exempt employees, rather than by describing their employer. See Commonwealth v. Resende, 474 Mass. 455, 465-466, 52 N.E.3d 1016 (2016) (differences in language between Massachusetts statute and analogous Federal law indicate Legislature's intent to deviate).