VALENTINE LUMBER & SUPPLY COMPANY *vs*. ADRIAN R. THIBEAULT & others.

Hampden. September 25, 1957. — December 4, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Mechanic's Lien. Equity Jurisdiction*, Mechanic's lien.

Failure to record an attested copy of the subpoena in a suit in equity brought under G. L. (Ter. Ed.) c. 254, § 5, by a materialman to enforce a subcontractor's lien acquired under § 4 defeated the lien even if all the information furnished by the subpoena was contained in a bond to dissolve the lien which was given under § 14 and accepted by the court and recorded. [412–413]
The lien enforcement procedure provided by G. L. (Ter. Ed.) c. 254, § 5, applies to a subcontractor's lien acquired under § 4. [414]

BILL IN EQUITY, filed in the Superior Court on March 27, 1952.

The plaintiff appealed from a final decree by *Hudson, J.*, after hearing on a master's report.

*Charles D. Sloan*, (*Samuel L. Thompson* with him,) for the plaintiff.

*Henry A. Moran, Jr.*, for the defendants Gianetti.

SPALDING, J. This is a bill in equity to establish a subcontractor's lien (G. L. [Ter. Ed.] c. 254, § 4) in favor of the plaintiff, hereinafter called Valentine, for materials furnished to the defendant Thibeault, the principal contractor, for the construction of a house on land of the defendants Antonio and Josephine E. Gianetti situated in Springfield.

A master to whom the case was referred, filed a report, and a summary of so much of his findings as are necessary to our decision is as follows: On June 12, 1951, the principal contract was executed by Thibeault and the Gianettis. On the same day Valentine and Thibeault entered into a subcontract whereby Valentine was to furnish materials for the construction of the Gianetti house. On June 19, 1951,

Valentine, as required by G. L. (Ter. Ed.) c. 254, § 4, recorded a notice of the subcontract. On the following day written notice of such recording was sent to the Gianettis.

Through the summer and early fall of 1951 Valentine delivered materials to the job, and the Gianettis made payments to Thibeault in accordance with the principal contract. No payments, however, were made by Thibeault to Valentine for the materials supplied. On October 25 Valentine and Thibeault extended the completion date of their subcontract from November, 1951, to January 2, 1952, and this extension was duly recorded. Shortly thereafter the parties to the principal contract made a similar extension in their contract.

On January 30, 1952, Valentine recorded (as required by G. L. [Ter. Ed.] c. 254, § 8) a statement, found by the master to be just and true, of the amount ($6,697.40) due it on the subcontract.

On March 27, 1952, the present suit was commenced. It is agreed that no attested copy of the subpoena issued in the suit was recorded. On April 2, 1952, a bond to dissolve the lien which is the basis of this suit was executed by the Gianettis. The bond, which is provided for in G. L. (Ter. Ed.) c. 254, § 14, was accepted by the court on April 7 and was recorded on the following day.

The master's report was confirmed by an interlocutory decree and a final decree was entered establishing that Thibeault was indebted to the plaintiff in the sum of $6,697.40 plus interest, or a total of $8,464.39, and ordering that the bill as against the Gianettis be dismissed. Valentine appealed.

The Gianettis argue that the failure of Valentine to file an attested copy of the subpoena defeats the lien. We agree. General Laws (Ter. Ed.) c. 254, § 5, provides: "An attested copy . . . [of the subpoena of the bill in equity brought to enforce the lien] *shall* be filed in the registry of deeds and recorded as provided in section nine" (emphasis supplied). Valentine argues that the recording of the bond to dissolve the lien cured the failure to record the subpoena

because the bond contained all the information that would have been contained in the subpoena. But a mechanic's lien is wholly the creature of statute and "can be enforced only by a strict compliance with the statute." *Savoie Quarry & Construction Co.* v. *Ziman,* 234 Mass. 210, 214. *Pratt & Forrest Co.* v. *Strand Realty Co. of Lowell,* 233 Mass. 314, 318. Other cases illustrative of this principle are *General Fire Extinguisher Co.* v. *Chaplin,* 183 Mass. 375 (statement recorded before completion of work), *Street Lumber Co.* v. *Sullivan,* 201 Mass. 484 (notice to agent of owner insufficient), *Wood* v. *Burwick,* 240 Mass. 4 (omission of completion date on notice of contract), and *Valentine Lumber & Supply Co.* v. *Thibeault,* 333 Mass. 352, 359 (omission of jurat on statement of account). Not every mistake, of course, in connection with the lien procedure is fatal. Thus in § 11 it is provided that "The validity of the lien shall not be affected by an inaccuracy in the description of the property to which it attaches, if the description is sufficient to identify the property, or by an inaccuracy in stating the amount due for labor or material unless it is shown that the person filing the statement has wilfully and knowingly claimed more than is due him." But the failure to record the subpoena was an omission to do something required in mandatory language by the statute, and there is nothing in the statute which excuses compliance with its provisions.

Assuming that the bond does contain the same information that the subpoena would, it is not a valid substitute. As we read the statute, there can be no substitute. Persons who rely on the recording system are entitled to rely on the documents required to be recorded. To hold that a document executed for one purpose gives notice of another and unrelated act would inject uncertainty into the recording system. In order that the rights of owners and prospective purchasers may be fully protected, mechanics' liens will be enforced only when there has been strict compliance with the statutory procedures. There has been no such compliance here.

Valentine further argues that because § 5 uses the phra-

seology of § 2 and not § 4 (which deals with liens of subcontractors) and because § 4 became part of our law after St. 1915, c. 292 (from which §§ 1, 2, and 3 are derived), § 5 applies only to liens arising under §§ 1, 2, and 3 and not to those arising under § 4. There is nothing to this contention. We are of opinion that the enforcement procedure provided by § 5 was intended to embrace the subcontractor's lien established by § 4. A different construction of § 5 would leave no procedure available under the statute for the enforcement of the lien under § 4. It would take clear and unequivocal language — and it is lacking here — to convince us that the Legislature intended such a result.

*Decree affirmed with costs*
*of this appeal.*