NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12561


CITY ELECTRIC SUPPLY COMPANY[1]  vs.  ARCH INSURANCE COMPANY.


Norfolk.      November 8, 2018. - March 29, 2019.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.


Mechanic's Lien.  Bond.  Practice, Civil, Enforcement of liability on bond.  Statute, Construction.



Civil action commenced in the Superior Court Department on August 17, 2016.

The case was heard by Beverly J. Cannone, J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.


Thomas E. Day for the plaintiff.
John W. DiNicola, II, for the defendant.


GAZIANO, J.  In this case, we consider whether a claimant seeking to enforce a target lien bond by commencing a civil action pursuant to the mechanic's lien statute, G. L. c. 254,

_____

[1] Doing business as Concord Electric Supply, Ltd.

§ 14, must record an attested copy of the complaint in the registry of deeds.  We conclude that the lien statute contains no such requirement.  A party seeking to enforce a target lien bond, a bond which has the effect of dissolving a mechanic's lien that has been placed on a property, need not record a copy of a complaint in the registry of deeds as a condition precedent to enforcing the bond.

1.  Background.  The essential facts are undisputed.  City Electric Supply Company, doing business as Concord Electric Supply, Ltd. (CES), supplied electrical materials for a construction project in Brookline to subcontractor Michael Franciosi, doing business as Electrical Professionals (Franciosi).  In June 2016, CES perfected a mechanic's lien on the Brookline property by recording a notice of contract in the Norfolk County registry of deeds pursuant to G. L. c. 254, § 4; the notice indicated that Franciosi owed CES $283,056.54.  Months later, Franciosi filed a suggestion of bankruptcy in the Superior Court.

On July 14, 2016, general contractor Tocci Building Corporation (Tocci) issued and recorded a "target lien bond,"[2]

---

[2] Both parties refer to a bond issued pursuant to G. L. c. 254, § 14, as a "target lien bond."  The term "target lien bond" is not used in the language of G. L. c. 254, § 14.  Nonetheless, as CES explains, a lien dissolution bond filed pursuant to G. L. c. 254, § 14, is "commonly referred to as a 'target bond.'"  We also previously have referred to a bond

pursuant to G. L. c. 254, § 14, in the amount of $283,056.54, the amount of the mechanic's lien that CES had created. The target lien bond listed the defendant, Arch Insurance Company (Arch), as surety, and was recorded in the Norfolk County registry of deeds.

In August, 2016, CES sought to enforce the target lien bond by filing a timely action against Franciosi and Arch in the Superior Court, pursuant to G. L. c. 254, § 14. CES properly served Franciosi and Arch. CES did not record a copy of its complaint in the registry of deeds within thirty days of commencement of the action.[3]

In March, 2017, Arch moved for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974); it argued that CES had failed to comply with G. L. c. 254. Specifically, Arch alleged that CES had not recorded in the registry of deeds an attested copy of its complaint to enforce the target lien bond within thirty days of filing the complaint, as would have been required in a lien enforcement action under G. L. c. 254, § 5. CES opposed the motion "on the grounds that suit on a lien bond

---

issued pursuant to G. L. c. 254, § 14, as a "lien dissolution bond." See NES Rentals v. Maine Drilling & Blasting, Inc., 465 Mass. 856, 860 (2013).

[3] In January, 2017, CES ultimately recorded a copy of the complaint in the Norfolk County registry of deeds, after counsel for Arch contacted CES.

under [G. L. c. 254, § 14,] does not require an attested copy of the complaint to be recorded and Arch's interpretation of the lien bond requirement is erroneous."

Following a hearing, a Superior Court judge allowed Arch's motion for summary judgment. The judge reasoned that G. L. c. 254, § 14, must be read in conjunction with "the detailed and precise requirements of [§] 5, which dictate the procedures for a lien enforcement action." As G. L. c. 254, § 5, requires that an attested copy of a complaint be recorded, the judge "reject[ed] [CES's] claim that because G. L. c. 254, § 14, is silent with respect to filing an attested copy of the complaint, it was excused from doing so within the thirty days of the commencement of the action as required by G. L. c. 254, § 5." CES filed a timely appeal. We allowed CES's petition for direct appellate review.

2. Statutory scheme. General Laws c. 254 "governs the creation, perfection, and dissolution of a mechanic's lien." National Lumber Co. v. United Cas. & Sur. Ins. Co., 440 Mass. 723, 726 (2004) (National Lumber II). Because a perfected lien encumbers the property upon which it is placed, one purpose of G. L. c. 254 is "to ensure that a person searching the land records in a registry of deeds can determine with certainty whether or not title to a particular parcel of land is encumbered by a mechanic's lien." National Lumber Co. v.

LeFrancois Constr. Corp., 430 Mass. 663, 668 (2000) (National Lumber I). Another important "purpose of G. L. c. 254 is 'to provide security to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner's real estate.'" Id., quoting Hammill-McCormick Assocs., Inc. v. New England Tel. & Tel. Co., 399 Mass. 541, 542-543 (1987). "Because a mechanic's lien is purely a creation of statute, we have consistently required exact compliance with the statute in order to create, perfect, and enforce such a lien." Golden v. General Bldrs. Supply LLC, 441 Mass. 652, 654 (2004). At the same time, we have recognized that the mechanic's lien "statute is . . . intended to protect those who lawfully enhance the value of land by the expenditure upon it of material or labor." Shaughnessy v. Isenberg, 213 Mass. 159, 161 (1912).

General Laws. c. 254 also "provides for prevention of future liens and dissolution of existing liens by the giving of a [lien] bond, which benefits . . . anyone possessing an interest in that land . . . by furnishing means to keep his title free from liens and preventing the sale of the land to satisfy a lien" (quotation omitted). NES Rentals v. Maine Drilling & Blasting, Inc., 465 Mass. 856, 860 (2013), citing G. L. c. 254, §§ 12, 14. To do so, the statute establishes two distinct types of lien bonds: "blanket" lien bonds that are

issued pursuant to G. L. c. 254, § 12, and "target" lien bonds that are issued under G. L. c. 254, § 14. The filing of a blanket lien bond prevents a lien from attaching to a property. See G. L. c. 254, § 12. See also J.W. DiNicola II & E.L. Hall, The Massachusetts Mechanic's Lien Law § 5.8.1, in Massachusetts Construction Law and Litigation (2d ed. 2018) ("Once filed, the [blanket lien] bond, by its terms, acts as a substitute for the real property. The liens of subcontractors and vendors attach to the bond as an alternate form of security for the property"). A target lien bond dissolves a lien that already has attached to a property. See G. L. c. 254, § 14.

A mechanic's lien is created when a notice of contract is filed in the registry of deeds. See G. L. c. 254, § 4; Tremont Tower Condominium, LLC v. George B.H. Macomber Co., 436 Mass. 677, 683 (2002) ("filing of the notice of contract is . . . the step that creates the lien in the first instance"). When a target lien bond is issued and recorded pursuant to G. L. c. 254, § 14, in a penal sum equal to a mechanic's lien that has been placed on a property, the mechanic's lien is dissolved and no longer encumbers the property. See National Lumber II, 440 Mass. at 729 ("the lien was dissolved when the [party] recorded [a company's] surety bond" in accordance with G. L. c. 254, § 14). See also G. L. c. 254, § 14. After a target lien bond is recorded pursuant to the terms and procedural requirements of

G. L. c. 254, § 14, a claimant becomes newly able to "recover on [its] claim for . . . labor and materials" by enforcing the target lien bond itself, as distinct from the then-dissolved mechanic's lien.  See G. L. c. 254, § 14.

At the same time, statutory dissolution of a lien under G. L. c. 254, § 14, does not dissolve a claimant's ability to recover costs incurred "for labor or labor and materials that served as the basis of the lien."  NES Rentals, 465 Mass. at 865 n.13.  A claimant seeking to enforce a target lien bond under G. L. c. 254, § 14, may recover, through a civil enforcement action, "to the extent that the claimant would have been able to recover" under the lien.  See NES Rentals, supra; G. L. c. 254, § 14.  In this way, G. L. c. 254, § 14, limits a claimant's ability to recover on a target lien bond to the amount of the claim that once formed the basis of the dissolved lien.  As a result, "[a] lien dissolution bond is inextricably connected to the underlying lien."  NES Rentals, supra.

3.  Discussion.  As stated, this case concerns CES's efforts to enforce a target lien bond.  As it did in the Superior Court, CES argues that it was not required, pursuant to G. L. c. 254, § 14, to record a copy of the complaint in the registry of deeds within thirty days of commencing an action to enforce the bond.  Accordingly, CES argues that the allowance of Arch's motion for summary judgment was error.  We agree.

a.   Standard of review.   We review the allowance of a motion for summary judgment de novo.   See Miller v. Cotter, 448 Mass. 671, 676 (2007).   "Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."   Twomey v. Middleborough, 468 Mass. 260, 267 (2014), citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

b.   Statutory interpretation.   "The starting point of our analysis is the language of the statute, 'the principal source of insight into Legislative purpose.'"   Simon v. State Examiners of Electricians, 395 Mass. 238, 242 (1985), quoting Commonwealth v. Lightfoot, 391 Mass. 718, 720 (1984).   "Where the language [of a statute] is plain and unambiguous, it is conclusive of the Legislature's purpose."   National Lumber II, 440 Mass. at 727, citing Pyle v. School Comm. of S. Hadley, 423 Mass. 283, 285 (1996).

i.   Statutory language.   The plain language of G. L. c. 254, § 14 -- the statutory provision pursuant to which CES commenced its civil action -- contains no requirement that a claimant must record an attested copy of a complaint in order to enforce a target lien bond.   This is in contrast to G. L. c. 254, § 12, which explicitly requires a party seeking to enforce a blanket lien bond to record a copy of the complaint in

the registry of deeds.  See G. L. c. 254, § 12 ("An attested copy of the complaint shall be filed and recorded in the registry of deeds").  General Laws c. 254, § 14, instead, provides simply that "[a]ny person in interest may dissolve a lien under this chapter by recording . . . a bond of a surety company . . . in a penal sum equal to the amount of the lien sought to be dissolved; and that "[u]pon the recording of the bond, the lien shall be dissolved."  "Notice of the recording shall be given to the claimant by serving on the claimant a copy of the notice of recording together with a copy of the bond by an officer qualified to serve civil process or by delivering same to the claimant."  Id.  A claimant must commence a civil action to recover on a target lien bond "within ninety days after the later of the filing of the statement required by [§] 8 or receipt of notice of recording of the bond."  Id.

When interpreting the absence of language in an otherwise "detailed and precise [statute], we regard [an] omission as purposeful."  Leary v. Contributory Retirement Appeal Bd., 421 Mass. 344, 348 (1995).  General Laws c. 254 is detailed and precise; it sets forth a "comprehensive scheme" to govern mechanic's liens and lien bonds (citation omitted).  See Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 642 (2002) ("Individual sections of the statute delineate time requirements for creating, maintaining, and enforcing a lien").  General Laws

c. 254, § 14, itself establishes various procedural requirements for acquiring, recording, and enforcing a target lien bond. See id. "We do not read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose." National Lumber II, 440 Mass. at 727, quoting General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 803 (1999). Indeed, we have long recognized that "statutes must be interpreted as enacted and statutory omissions cannot be supplied by the court." Modern Cont. Constr. Co. v. Lowell, 391 Mass. 829, 839-840 (1984). "Where language in certain provisions is noticeably absent from other provisions of the same statute, such as here, we have consistently held that the language should not be implied where it is not present." National Lumber II, 440 Mass. at 728, quoting Hallet v. Contributory Retirement Appeal Bd., 431 Mass. 66, 69 (2000).

By contrast, with regard to blanket lien bonds, G. L. c. 254, § 12, expressly requires that a complaint be recorded in the registry of deeds. As discussed, a blanket lien bond issued pursuant to G. L. c. 254, § 12, does not dissolve a lien but, rather, prevents future liens from attaching to a property. Because a blanket lien bond is issued before the conclusion of a construction project, it may comprise only a "person's fair estimate of the contract sum." See G. L. c. 254, § 12. As a

result, subcontractors and suppliers conceivably might record notices of contract on a project in amounts greater than the amount of a blanket lien bond, such that the blanket lien bond may prove insufficient to protect the property from becoming subject to a lien. Because a lien burdens the title of a property, potential purchasers and others retain an interest in knowing about suits to enforce blanket lien bonds that may fail to prevent liens from attaching to the property.

Arch argues that, in light of this court's obligation to read G. L. c. 254, § 14, alongside G. L. c. 254, § 5, which requires recording of a complaint in the context of a lien enforcement action, a claimant must record a complaint in order to enforce a target lien bond. As stated, G. L. c. 254, § 5, obliges a claimant seeking to enforce a lien to record an attested copy of its complaint "within thirty days of the commencement of the action, or such lien shall be dissolved." Thus, pursuant to G. L. c. 254, § 5, the recording of a complaint is one of several steps necessary to perfect a lien. See National Lumber I, 430 Mass. at 668. Arch maintains that because G. L. c. 254, § 14, provides that the recording of a target lien bond does "not create any rights which the claimant would not have had, or impair any defense which the obligors would have had, in an action to enforce a lien," the recording requirement of G. L. c. 254, § 5, is transmuted into a

requirement that a claimant record its complaint in order to enforce a target lien bond issued under G. L. c. 254, § 14. We do not agree.

To be sure, "[w]hen the meaning of a statute is brought into question, a court properly should read other sections and should construe them together" (citation omitted). LeClair v. Norwell, 430 Mass. 328, 333 (1999). As Arch correctly notes, we previously have indicated that, as with the provisions of any statute, G. L. c. 254, § 14, should be read together with other provisions of the lien statute. See, e.g., NES Rentals, 465 Mass. at 868 (referring to procedural requirements of G. L. c. 254, § 5, in construing G. L. c. 254, § 14). At the same time, however, "[w]e do not 'interpret a statute so as to render it or any portion of it meaningless.'" Volin v. Board of Pub. Accountancy, 422 Mass. 175, 179 (1996), quoting Adamowicz v. Ipswich, 395 Mass. 757, 760 (1985).

General Laws c. 254, § 5, provides that dissolution of a lien is a consequence of a plaintiff's failure to record a complaint to enforce the lien. In an action to enforce a target lien bond, however, the underlying lien already has been dissolved. Therefore, to ascribe to Arch's interpretation would be to render the phrase "or such lien shall be dissolved," G. L. c. 254, § 5, unnecessary surplusage in the context of a target

lien bond enforcement action.[4]  "[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."  Marx v. General Revenue Corp., 568 U.S. 371, 386 (2013).

ii.  Legislative history.  A review of the legislative history of G. L. c. 254 also supports our reading of the statute.  "A fundamental principle of statutory interpretation is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (quotation and citation omitted).  Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).

The Legislature previously has considered and rejected language suggesting that G. L. c. 254, § 14, should be considered subject to all of the procedural requirements of

---

[4] We address today the narrow issue whether G. L. c. 254, § 14, requires that a claimant seeking to enforce a lien bond must record a copy of an attested complaint in the registry of deeds.  We do not conclude that a lien bond "replace[s] the Lien Law in its entirety," as Arch suggests would be the result of a ruling against it, and, indeed, draw no conclusions with respect to any other procedural rights or defenses under G. L. c. 254, § 14.

G. L. c. 254, § 5.  In 1973, the Legislature amended G. L. c. 254, § 14, as part of an effort to bring the General Laws into conformity with the then newly adopted rules of civil procedure and rules of appellate procedure.  The year before, the Legislature had revised G. L. c. 254, § 14, to provide for a new cause of action to enforce target lien bonds, beyond the context of a suit under G. L. c. 254, § 5.  See St. 1972, c. 774, § 10.  Notwithstanding this then-recent adoption of the new cause of action, a 1973 Senate bill proposed the following language to bring G. L. c. 254, § 14, into conformity with the rules of civil procedure,

> "Section 14 of said chapter 254, as appearing in the Tercentenary Edition, is hereby amended by striking out the first sentence and inserting in place thereof the following sentence:  In a civil action under section five, the court may, in its discretion, accept a bond, with sufficient surety or sureties, to dissolve the lien of any creditor or all liens, as to the whole or any part of the property, or any interest therein."

1973 Senate Doc. No. 11, at 190.  The proposed language referenced an outdated version of the mechanic's lien statute, and was dropped from the final act as adopted, thereby rejecting any reference to G. L. c. 254, § 5.  See St. 1973, c. 1114, § 320 ("The last sentence of section 14 of said chapter 254, as appearing in section 10 of chapter 774 of the acts of 1972, is hereby amended by striking out the words 'petition in equity filed' and inserting in place thereof the words:  -- civil

action commenced").  "Where the Legislature has deleted . . . language, apparently purposefully, the current version of the statute cannot be interpreted to include the rejected requirement.  Reading in language that the Legislature chose to remove . . . violates basic principles of statutory construction and impermissibly interferes with the legislative function." Aids Support Group of Cape Cod, Inc. v. Barnstable, 477 Mass. 296, 303 (2017), quoting Commonwealth v. Porges, 460 Mass. 525, 530 (2011).

Arch's reliance on Valentine Lumber & Supply Co. v. Thibeault, 336 Mass. 411 (1957) (Valentine Lumber), in support of its argument that recording of the complaint was required is misplaced.[5]  In Valentine Lumber, supra at 412-413, this court concluded that a claimant's failure to record a complaint (called a "subpoena") to enforce a target lien bond precluded the claimant from recovering under the mechanic's lien statute. Under the statutory scheme in existence when Valentine Lumber

---

[5] We recognize, as Arch argues, that many entities, including the general contractor and other subcontractors, may have an interest in knowledge of a target lien bond enforcement action; as they are not interested parties to the lawsuit, they will not receive notice through timely service of process.  For example, here CES provided Franciosi and Arch -- the two named parties in its enforcement action -- with notice of its claim on the target lien bond.  Tocci, the general contractor, however, who was not a party to the action, did not receive such notice, and under the terms of the statute, CES was not obligated to provide it.  Any resolution of this issue, however, is for the Legislature.

was decided, G. L. c. 254, § 5, expressly mandated that, where a plaintiff sought to enforce a target lien bond, a copy of the complaint (subpoena) had to be recorded. See Valentine Lumber, supra at 413 ("the failure to record the subpoena was an omission to do something required in mandatory language by the statute, and there is nothing in the statute which excuses compliance with its provisions"); St. 1915, c. 292, §§ 4, 9. As discussed, after this court's decision in Valentine Lumber, supra, the Legislature created within G. L. c. 254, § 14, an independent action to enforce target lien bonds in which it included no express recording requirement. See St. 1972 c. 774, § 10.

Under the terms of the mechanic's lien statute in effect since 1972, "[o]nce a bond is recorded in accordance with § 14, the lien is dissolved on the record, and any concern about uncertainty of title arising from that lien is eliminated." NES Rentals, 465 Mass. at 869. Thus, recording a complaint to enforce a target lien bond would not support the goal of "ensur[ing] that a person searching the land records in a registry of deeds can determine with certainty whether or not title to a particular parcel of land is encumbered by a mechanic's lien."[6] National Lumber I, 430 Mass. at 668.

---

[6] Arch argues that "it is standard practice in the industry for lien claimants to record attested copies of complaints

4.  Conclusion.  The order allowing summary judgment is vacated and set aside, and the matter is remanded to the Superior Court for further proceedings.

So ordered.

---

against target lien bond sureties."  We do not read G. L. c. 254, § 14, to preclude interested entities from filing attested copies of complaints to enforce target lien bonds in the registry of deeds; we merely interpret the statutory text not to mandate such recording.  While industry "practice may be helpful in discerning the Legislature's intent," Tremont Tower Condominium, LLC, 436 Mass. at 688, "[a]n industry practice, standing alone, does not necessarily dictate our construction of a statute."  Id. at 687-688.