NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13781


DAVID M. SABATINI  vs.  KRISTIN A. KNOUSE & others.[1]



Suffolk.     February 2, 2026. - May 19, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
& Wolohojian, JJ.


Employment, Sexual harassment.  Anti-Discrimination Law, Unfair
    educational practice.  Statute, Construction.  Practice,
    Civil, Counterclaim and cross-claim, Dismissal.



Civil action commenced in the Superior Court Department on
October 20, 2021.

A motion to dismiss was heard by Hélène Kazanjian, J.

A proceeding for interlocutory review was heard in the
Appeals Court by Sookyoung Shin, J.

After review by the Appeals Court, 105 Mass. App. Ct. 174
(2025), the Supreme Judicial Court granted leave to obtain
further appellate review.


Ellen J. Zucker (Kimberly Crowley also present) for Kristin
A. Knouse.
Edward Foye (Lisa G. Arrowood & Sarah E. A. Sousa also
present) for the plaintiff.

---

[1] Ruth Lehmann and Whitehead Institute for Biomedical
Research.

Naomi R. Shatz & Niamh S. Gibbons, for Jane Doe Inc. & others, amici curiae, submitted a brief.

WENDLANDT, J.  This case presents the question whether G. L. c. 214, § 1C (sexual harassment statute), which protects a person's right to be free from sexual harassment in, inter alia, the academic context, provides a sexual harassment victim with a cause of action directly against the individual perpetrator of the harassment.  Concluding that it does, we reverse the Superior Court judge's order dismissing Kristin A. Knouse's counterclaim asserting that she was sexually harassed by David M. Sabatini, her former instructor, thesis committee advisor, and fellowship director and mentor.  We remand for proceedings consistent with this opinion.[2]

Background.  1.  Facts.  We summarize the following allegations from the counterclaim, accepting them as true and drawing all reasonable inferences in Knouse's favor.  See Cubberley v. Commerce Ins. Co., 495 Mass. 289, 290 (2025), citing Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 17 (2018) ("We summarize the allegations in the operative complaint, accepting them as true and drawing every reasonable inference in favor of the plaintiffs").

---

[2] We acknowledge the amicus brief submitted by Jane Doe Inc., the Victim Rights Law Center, the Women's Bar Association of Massachusetts, and the Massachusetts Employment Lawyers Association.

Sabatini was a laboratory director at the Whitehead Institute for Biomedical Research (Whitehead) and a tenured professor at the Massachusetts Institute of Technology (MIT) in 2012 when he met Knouse, then a graduate student at Harvard University and MIT. Sabatini was one of Knouse's instructors at MIT and served on her dissertation committee.

During a discussion in 2016 concerning whether Sabatini would endorse Knouse's application for an upcoming fellowship at Whitehead, Sabatini expressed concern that Knouse took herself too seriously and asked Knouse whether she ever had "fun," "fuck[ed] around," or had sex. Knouse responded that she did have fun and quickly left the conversation. Subsequently, Sabatini recommended Knouse for the fellowship and supported her grant application, both of which she secured.

Knouse joined Whitehead as a fellow in 2018. That year, Knouse and Sabatini began a sexual relationship that ended in 2019; thereafter, Sabatini continued to make sexualized comments to her. Knouse asserts that she struggled under this dynamic. Sabatini, whose laboratory was next to Knouse's, was the director of the Whitehead fellows program, and he served as a mentor and reviewer of her work. Knouse feared the potential consequences that losing an influential mentor would have on her career and believed she could not terminate the relationship without professional repercussions. She "began to withdraw from

the scientific community" and "experience[d] debilitating feelings of entrapment and hopelessness."

Around this period, the results of a 2020 culture survey of Whitehead "suggested that Sabatini either personally engaged in sexually explicit and inappropriate discussions or fostered an environment that tolerated -- or promoted -- such inappropriate discussions and that he threatened those who might report his conduct." The survey results "amplified complaints" raised by two women, who had trained in Sabatini's laboratory, and by Knouse, who contemporaneously disclosed to the director that she had felt harassed during her fellowship but, fearing retaliation, did not provide any further details.

In response, Whitehead hired an independent legal team to investigate. The investigators determined, inter alia, that Sabatini had "engaged in and otherwise tolerated sexist and sexualized work discussions with his lab," and that engaging in such discussions "was an implicit part of succeeding in" Sabatini's laboratory. They also concluded that there was a "culture of fear and retaliation" within the laboratory. They reported that Sabatini had "engag[ed] in sexual relations with a Whitehead Fellow" and violated several Whitehead policies, including its sexual harassment policy.

Sabatini resigned from his Whitehead position.  MIT announced that it was placing Sabatini on leave to perform its own investigation.

2.  Prior proceedings.  While the MIT investigation was ongoing, Sabatini commenced the present action against Knouse, Whitehead, and the director of Whitehead, alleging claims for defamation, tortious interference with contractual, prospective, and advantageous relations, and unlawful discrimination in violation of G. L. c. 151B.  He also asserted claims against Knouse for intentional and negligent infliction of emotional distress and against Whitehead for breach of contract.

Knouse filed a counterclaim against Sabatini alleging, inter alia, sexual harassment under G. L. c. 214, § 1C, which Sabatini moved to dismiss.  A Superior Court judge allowed the motion as to that count of Knouse's counterclaim on the ground that the sexual harassment statute did not allow claims against individuals.  An interlocutory appeal was authorized by a single justice of the Appeals Court.  The Appeals Court affirmed the dismissal, concluding that G. L. c. 214, § 1C, does not permit claims against individuals.  Sabatini v. Knouse, 105 Mass. App. Ct. 174, 185-186 (2025).  The Appeals Court reasoned that because the "substantive law" regarding sexual harassment in the academic context is set forth in G. L. c. 151C, § 2 (g), and because that statute applies only to educational institutions,

the sexual harassment statute also applies only to educational institutions.  Id., citing Lowery v. Klemm, 466 Mass. 572, 577 (2006), and Morrison v. Northern Essex Community College, 56 Mass. App. Ct. 784, 786 (2002).

We granted Knouse's application for further appellate review, limited to the issue whether G. L. c. 214, § 1C, permits claims against individuals, as opposed to educational institutions, for sexual harassment that occurs in educational contexts.[3]  496 Mass. 1103 (2025).

3.  Statutory framework.  First enacted in 1986 as part of "An Act prohibiting sexual harassment," St. 1986, c. 588 (act), the sexual harassment statute is part of a comprehensive scheme, together with G. L. cc. 151B and 151C, to address the problem of sexual harassment in the employment and academic contexts.  See Green v. Wyman-Gordon Co., 422 Mass. 551, 553 (1996) (discussing enactment of St. 1986, c. 588).  The act amended G. L. c. 151B, adding a definition of "sexual harassment" in the workplace, G. L. c. 151B, § 1 (18), see note 4, infra, and declaring it an

---

[3] On appeal before this court, Sabatini asserts that Knouse's counterclaim fails because Whitehead is not an "educational institution" under G. L. c. 151C and Knouse was not a "student" during her term as a Whitehead fellow.  He further asserts that Knouse's c. 151C claims are barred by the statute of limitations.  Although Sabatini asserts that as a result, Knouse lacks "standing," these arguments concern whether she has failed to state a claim under c. 151C -- an argument we decline to address in the first instance.

"unlawful practice" for an employer or its agents "to sexually harass any employee," G. L. c. 151B, § 4 (16A).  It also amended G. L. c. 151C, adding a definition of "sexual harassment" in the academic context, G. L. c. 151C, § 1 (e), see note 5, infra, and making it an "unfair educational practice for an educational institution . . . [t]o sexually harass students in any program or course of study in any educational institution," G. L. c. 151C, § 2 (g).  And, relevant here, the act created the sexual harassment statute, which provides that "[a] person shall have the right to be free from sexual harassment, as defined in [G. L. cc. 151B[4] and 151C[5]]."  G. L. c. 214, § 1C.  By

---

[4] General Laws c. 151B, § 1 (18), defines "sexual harassment" in the workplace as

"sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment.  Discrimination on the basis of sex shall include, but not be limited to, sexual harassment."

[5] General Laws c. 151C, § 1 (e), defines "sexual harassment" in the academic context as

"any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when:  -- (i) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of the provision of the benefits, privileges or placement services or as a basis for the evaluation of

incorporating the definitions of sexual harassment in G. L. cc. 151B and 151C, the sexual harassment statute "limit[s] statutory protection to conduct occurring in the employment and academic contexts." Lowery, 446 Mass. at 578. See id. at 578 n.6 ("the Legislature's incorporation of the definitions of sexual harassment in G. L. c. 151B and c. 151C strongly suggests an intention to restrict the meaning of the term 'person' in [the sexual harassment statute] to a 'person' either in the employment context or a person in the educational context" [citation and quotation omitted]).

The statute also grants to the Superior Court "jurisdiction to enforce this right [to be free from sexual harassment in the employment and academic contexts] and to award the damages and other relief provided in the third paragraph of [G. L. c. 151B, § 9]. Any such action shall be commenced in the superior court within the time allowed by said [G. L. c. 151B, § 9]." G. L. c. 214, § 1C. As such, the statute provides relief to victims of sexual harassment, including actual and punitive damages and reasonable attorney's fees and costs, and sets the statute of

---

academic achievement; or (ii) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment."

limitations for sexual harassment claims.  See G. L. c. 151B,
§ 9, second & third pars.

Finally, the sexual harassment statute requires that "[n]o
claim under [the statute] that is also actionable under [G. L.
c. 151B or 151C] shall be brought in superior court unless a
complaint was timely filed with the Massachusetts commission
against discrimination [(MCAD)] under [G. L. c. 151B]" (anti-
duplication clause).[6]  G. L. c. 214, § 1C.  Thus, the sexual
harassment statute does not provide a duplicate path to avoid
the administrative procedures of G. L. cc. 151B and 151C;
instead, where a person suffers sexual harassment in the
workplace or in the academic context, and where either G. L.
c. 151B or 151C provides a mechanism for that person to file an
administrative complaint with the MCAD, the person first must

---

[6] The anti-duplication clause was added by amendment in
2002, codifying our decisions in Green, 422 Mass. at 557-558,
and Guzman v. Lowinger, 422 Mass. 570, 571-572 (1996).  See
Green, supra ("Where, as here, c. 151B applies, its
comprehensive remedial scheme is exclusive, in the absence of an
explicit legislative command to the contrary.  Otherwise, to
permit such duplication of remedies would allow claimants to
bypass the procedural prerequisites defined by the Legislature
in G. L. c. 151B, crippling the effectiveness of this specific
statutory remedy for discrimination in employment" [quotation,
citation, and alterations omitted]); Guzman, supra at 572 ("Just
as G. L. c. 151B provides an exclusive remedy for sexual
harassment claims against employers with six or more employees,
G. L. c. 214, § 1C, provides the exclusive remedy for such
claims against employers of fewer than six employees.  In
neither case does an independent and duplicative right exist to
pursue such claims under the civil rights act").

pursue the administrative remedy.  In other words, the statute "fills a gap in the statutory scheme" by providing a remedy to those who suffer sexual harassment in employment and academic contexts but who are not otherwise covered by G. L. c. 151B, § 4 (16A), or c. 151C, § 2 (g).  Lowery, 446 Mass. at 578.  The sexual harassment statute "extends to employees and students protection that is not otherwise available under G. L. c. 151B and c. 151C; it does not duplicate the relief provided by those statutes."  Id.

In the academic context, because the administrative remedies under G. L. cc. 151B and 151C are available only to applicants to educational institutions and to vocational students, the anti-duplication clause does not preclude a nonvocational student who claims to have been sexually harassed from first filing suit in the Superior Court under the sexual harassment statute.  See G. L. c. 151C, § 3 (a) (describing administrative procedures available to "[a]ny person seeking admission as a student to any educational institution, or enrolled as a student in a vocational training institution" claiming to be "aggrieved by an alleged unfair educational practice"); G. L. c. 151B, § 9 ("Any person claiming to be aggrieved by a practice made unlawful . . . under [G. L. c. 151C] . . . may, at the expiration of ninety days after the filing of a complaint with the [MCAD], or sooner if a

commissioner assents in writing, but not later than three years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief or both in the superior [court] . . ."). See also Doe No. 99 v. Cheffi, 105 Mass. App. Ct. 704, 708-709 (2025) (explaining that nonvocational student who was sexually harassed does not have available administrative remedy under G. L. c. 151C and thus may proceed directly under sexual harassment statute).

Discussion. With this framework in mind, we consider whether, in the academic context, the sexual harassment statute provides a victim with a cause of action directly against an individual abuser or whether, instead, the victim's recourse is solely against the educational institution.

1. Standard of review. "We review the allowance of a motion to dismiss de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor" (citation omitted). Glovsky v. Roche Bros. Supermkts., Inc., 469 Mass. 752, 754 (2014). The sole issue before us on appeal is one of statutory construction, which we also review de novo. Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).

2. Plain meaning. Statutes are interpreted "'according to the intent of the Legislature,' which we derive 'from all [of the statute's] words construed by the ordinary and approved

usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished.'" Hartnett v. Contributory Retirement Appeal Bd., 494 Mass. 612, 616 (2024), quoting Matter of the Estate of Mason, 493 Mass. 148, 151 (2023). "In construing a statute, 'we begin with its plain language.'" Hartnett, supra, quoting Matter of the Estate of Mason, supra at 152. See Cannata v. Mashpee, 496 Mass. 188, 191 (2025) ("a statute's language must be given effect consistent with its plain meaning"). "[W]here the language of a statute is plain and unambiguous, it is conclusive as to legislative intent." Hartnett, supra, quoting Six Bros., Inc. v. Brookline, 493 Mass. 616, 622 (2024).

As set forth supra, the sexual harassment statute provides that "[a] person shall have a right to be free from sexual harassment" and that the Superior Court "shall have . . . jurisdiction to enforce this right and to award . . . damages." G. L. c. 214, § 1C. The statute creates a cause of action -- the right to be free from sexual harassment in the employment and academic contexts and a grant of judicial redress against another who violates that right. See Black's Law Dictionary 275 (12th ed. 2024) (defining "cause of action" as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in

court from another person"). Nothing in the statute's plain meaning shields individuals who perpetrate sexual harassment. Nor does the definition of sexual harassment in the academic context, see note 5, supra, which is incorporated into the sexual harassment statute by reference, support such a limit on liability.

Further, we generally construe remedial statutes "liberally, giving effect to every provision to produce a consistent body of law." Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008), citing 3 C. Sands, Sutherland Statutory Construction § 72.05, at 392 (4th ed. 1974) (civil rights statutes are remedial and entitled to liberal construction). See Thurdin, supra ("The rule for the construction of remedial statutes is that cases within the reason, though not within the letter, of a statute shall be embraced by its provisions . . ." [citation omitted]). Reading into the sexual harassment statute a limit to shield individual perpetrators of the harassment, as pressed by Sabatini, would run counter to the statute's broad remedial purpose. See Lowery, 446 Mass. at 581 (noting that sexual harassment statute "provide[s] greater protections and grant[s] a broader array of remedies and tools for enforcement than are available at common law" [citation omitted]).

Notably, the sexual harassment statute mirrors the language of G. L. c. 214, § 1B (right to privacy statute), which provides

that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy" and that the Superior Court has "jurisdiction . . . to enforce such right" and "to award damages."  G. L. c. 214, § 1B. Significantly, we have allowed, under the right to privacy statute, claims against both individuals and institutions.  See, e.g., Polay v. McMahon, 468 Mass. 379, 385 (2014) (holding that plaintiffs "made out a plausible claim" against their neighbor for invasion of privacy under G. L. c. 214, § 1B); Bratt v. International Business Machs. Corp., 392 Mass. 508, 519 (1984) (concluding that corporation may be held liable for intracorporate disclosure of private facts giving rise to invasion of privacy claim under G. L. c. 214, § 1B).  We see no reason to adopt a narrower construction of the sexual harassment statute.

3.  Unfair educational practices.  Sabatini's contention that the sexual harassment statute is limited to claims against an educational institution rests on the "unfair educational practice[s]" provision set forth in G. L. c. 151C, § 2 (g), which provides:

> "It shall be an unfair educational practice for an educational institution . . . [t]o sexually harass students in any program or course of study in any educational institution" (emphasis added).

Sabatini asserts that because G. L. c. 151C, § 2 (g), enumerates sexual harassment as an unfair educational practice, and because liability for engaging in those practices extends only to the educational institution under G. L. c. 151C, liability under the sexual harassment statute should also be limited to claims against educational institutions. We disagree.

As discussed supra, the sexual harassment statute incorporates G. L. c. 151C's definition of the term "sexual harassment." G. L. c. 214, § 1C ("A person shall have the right to be free from sexual harassment, as defined in chapter . . . one hundred and fifty-one C" [emphasis added]). Sexual harassment in the academic context is defined in G. L. c. 151C, § 1 (e). See note 5, supra.

Significantly, the statute does not reference G. L. c. 151C's unfair educational practices provision, G. L. c. 151C, § 2 (g), which in turn limits liability under G. L. c. 151C to the "educational institution" itself. In essence, Sabatini would have us rewrite the statute to state that "[a] person shall have the right to be free from [unfair educational practices], as defined in chapter 151C" or that "[a] person shall have the right to be free from sexual harassment [by an educational institution], as defined in chapter 151C." This we cannot do. See City Elec. Supply Co. v. Arch Ins. Co., 481 Mass. 784, 789 (2019) ("We do not read into the statute a

provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose" [citation omitted]). "Indeed, we have long recognized that statutes must be interpreted as enacted and statutory omissions cannot be supplied by the court" (quotation and citation omitted). Id.

Moreover, the omission of any reference to G. L. c. 151C's unfair educational practices provision stands in stark contrast to other language in the sexual harassment statute that expressly incorporates by reference specific provisions of G. L. cc. 151B and 151C. See, e.g., G. L. c. 214, § 1C (expressly adopting definition of "sexual harassment" from G. L. cc. 151B and 151C); id. ("The superior court shall have the jurisdiction to . . . award the damages and other relief provided in the third paragraph of section 9 of chapter 151B. Any such action shall be commenced . . . within the time allowed by said section 9 of said chapter 151B" [emphases added]). The Legislature's express inclusion of these provisions of G. L. cc. 151B and 151C strongly supports the conclusion that its intent was to exclude other provisions. See Attorney Gen. v. Mystic Valley Regional Charter Sch., 497 Mass. 251, 259 (2026) ("the maxim 'expressio unius est exclusio alterius' [holds that] the express inclusion of one thing in a statute is an implied exclusion of other

things not included in the statute" [quotation and citation omitted]).

For this same reason, we disagree with Sabatini's argument that the sexual harassment statute incorporates wholesale the "substantive law" of G. L. c. 151C, including the provision of G. L. c. 151C, § 2, which provides that educational institutions are liable for a list of unfair educational practices but does not provide that individuals are liable. Had the Legislature intended that the sexual harassment statute function solely as a mechanism to enforce the prohibitions set forth in G. L. c. 151, § 2 (g), it would have said so expressly.

Our decision in Lowery is not to the contrary. There, we determined that the incorporation of the definitions of "sexual harassment" in G. L. cc. 151B and 151C in the sexual harassment statute demonstrated that the statute's protection applied only in the employment and academic contexts, because those definitions are limited to those contexts. See Lowery, 446 Mass. at 578. We did not suggest that the "substantive law" of G. L. c. 151C, which sets forth a list of unfair educational practices by educational institutions, limited those liable for violations of the sexual harassment statute.

Sabatini's position also garners no support from the comprehensive statutory scheme comprising G. L. cc. 151B

and 151C and the sexual harassment statute.[7]  See Malloy v. Department of Correction, 487 Mass. 482, 496 (2021), quoting Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Comm'n, 394 Mass. 233, 240 (1985) ("In interpreting a statute, we look not only to the specific words at issue but also to other sections, and 'construe them together . . . so as to constitute an harmonious whole consistent with the legislative purpose'").  Here, permitting a claim under the sexual harassment statute against the individual perpetrator of the sexual harassment does not run counter to the comprehensive scheme.  In fact, where the Legislature sought to cabin a claim under the sexual harassment statute to specific provisions set forth in G. L. cc. 151B and 151C, it did so expressly.  See G. L. c. 214, § 1C (applicants to educational institutions and vocational students must pursue administrative remedies because "[n]o claim under this section that is also actionable under chapter 151B or chapter 151C shall be brought in superior court unless a complaint was timely filed with the [MCAD] under said chapter 151B" [emphases added]); G. L. c. 151C, § 3 (a) (providing administrative remedies for applicants and vocational students

_____

    [7] Cf. Green, 422 Mass. at 555, 557 (relying on G. L. c. 151B's "comprehensive remedial scheme" to impose limitations on sexual harassment statute's availability in workplace context).

only).[8]  See also <u>Doe No. 99</u>, 105 Mass. App. Ct. at 708-709

("Although the new language [added by the 2002 amendment to the

sexual harassment statute] imposes an administrative filing

requirement on vocational students and applicants, it does not

alter the remedies available to all other students"); <u>Morrison</u>,

56 Mass. App. Ct. at 786 n.6 (examining prior version of sexual

harassment statute and noting that "c. 151C, in contrast to

c. 151B, [does not] state that the provisions for the filing of

sexual harassment claims with the [MCAD] are exclusive").[9]  In

_____

[8] Because of the comprehensiveness of the administrative
remedies for sexual harassment in the workplace under G. L.
c. 151B, as well as the exclusivity provision in G. L. c. 151B,
§ 9, the anti-duplication clause has a different effect in the
employment context, where an employee generally must pursue
remedies under G. L. c. 151B first.  See G. L. c. 151B,
§ 5 (detailing administrative process before MCAD, including
filing, investigation, hearing, and adjudication procedures);
G. L. c. 151B, § 9 ("Any person claiming to be aggrieved by a
practice made unlawful under this chapter . . . may . . . bring
a civil action for damages or injunctive relief or both in the
superior or probate court for the county in which the alleged
unlawful practice occurred . . .").  As discussed <u>supra</u>, no
comparable administrative scheme exists under c. 151C for
nonvocational students.

[9] The Appeals Court's decision in <u>Morrison</u> does not support
Sabatini's argument that the sexual harassment statute is
limited to claims against educational institutions.  In
<u>Morrison</u>, the Appeals Court acknowledged that G. L. c. 151C does
not provide an administrative remedy to students at educational
institutions; thus, the Appeals Court determined that a student
who was the victim of sexual harassment could bring a claim
under the prior version of the sexual harassment statute without
first filing an administrative complaint with the MCAD.  See
<u>Morrison</u>, 56 Mass. App. Ct. at 786 n.6.  The court did not
suggest that G. L. c. 151C's unfair educational practices
provision cabined the remedies available to students.

view of the limited reach of the anti-duplication clause's prohibition in the academic context, and in light of the remedial nature of the statute, we decline to construe the sexual harassment statute narrowly to provide relief only against educational institutions.

Conclusion.  We conclude that, in the academic context, the sexual harassment statute permits claims against individual perpetrators of sexual harassment.  The judge's order allowing Sabatini's motion to dismiss count I of Knouse's counterclaim on this ground is reversed.  The judge did not reach Sabatini's alternative grounds for dismissal, and we decline to do so in the first instance.  Accordingly, the matter is remanded for further proceedings consistent with this opinion.

So ordered.

---

The sexual harassment statute was subsequently amended, see note 6, supra.  But the amendment did nothing to address the lack of administrative remedies available to students under G. L. c. 151C.  See Doe No. 99, 105 Mass. App. Ct. at 708-709 (examining current version of sexual harassment statute and noting that administrative procedures under G. L. c. 151C did not bar student, who had no such administrative procedures available to her, from filing suit under sexual harassment statute directly).  The amendment lends no support to Sabatini's assertion that the limitation in G. L. c. 151C's unfair educational practices provision to claims against educational institutions also limits the remedies available under the sexual harassment statute.