NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1086

LAUREN WOODWARD

vs.

BOARD OF REGISTRATION IN NURSING & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Lauren Woodward, "is a female employed as a Compliance Officer III" (CO III) by the Massachusetts Department of Public Health's (DPH) Board of Registration in Nursing (BORN).[2]  She filed an action in the Superior Court alleging that the defendant violated the Massachusetts Equal Pay Act (MEPA), G. L. c. 149, § 105A, and the Massachusetts Fair Employment Practices Act, G. L. c. 151B.  The defendant moved for summary judgment arguing, inter alia, that it conducted a good faith self-evaluation of possible gender-based pay disparities and is

---

[1] Massachusetts Department of Public Health.

[2] BORN is a component of DPH.  See G. L. c. 13, § 9 (a); G. L. c. 112, § 1.  We refer to them collectively as "the defendant" herein.

statutorily immunized from the plaintiff's claims under the defense set forth in G. L. c. 149, § 105A (d). Agreeing with the Superior Court judge that the summary judgment record reveals no genuine issue of material fact regarding whether the defendant is entitled to this defense, we affirm.

Background. 1. Factual background. We summarize the undisputed material facts in the summary judgment record. The defendant hired the plaintiff as a CO III in 2015. The duties of a CO III at DPH involve investigating complaints made against nurses licensed in Massachusetts. At the time that the plaintiff was hired in or around 2015, the Commonwealth's human resources division (HRD) guidelines required the defendant to calculate the number of years of comparable experience that the plaintiff (or any hire) had to determine "the step at which each person would be placed upon hire, which would in turn determine their annual salary." The plaintiff was credited with ten years of comparable experience from her prior work as a nurse and paralegal, and the defendant recommended that the plaintiff's "salary start at a grade 13, step 6, for a starting annual salary of $65,241.28."

In 2019 and 2020, the defendant hired two male candidates, Anthony Pettigrew and Edward Riggs, to CO III positions. The defendant determined that Pettigrew possessed over thirty years

2

of comparable experience based on his prior work as a Federal investigator for the Drug Enforcement Administration. The defendant also noted that Pettigrew had a bachelor's degree in criminal justice and a master's degree in service management and recommended that his "salary start at a grade 13, step 12, for an annual salary of $82,763.46." Similarly, the defendant determined that Riggs possessed over twenty-five years of comparable experience based on his prior work in law enforcement as a police officer. The defendant also noted that Riggs had started his career in the National Guard and as a military police officer, held a bachelor of science degree in social work, had an emergency medical technician certificate and had conducted clinical quality control investigations in that role, and recommended that his "salary start at grade 13, step 14, for an annual salary of $87,829.82."[3] The plaintiff, Pettigrew, and Riggs were each entitled to annual salary increases under their collective bargaining agreement.

2. MEPA amendment. In 2016, MEPA was amended to add an affirmative defense to liability under G. L. c. 149, § 105A (b), and G. L. c. 151B, § 4. See St. 2016, c. 177, § 2 (effective

---

[3] It is undisputed that DPH is required to follow HRD's hiring guidelines, but the plaintiff maintains that there is a material dispute as to whether the defendant indeed followed those guidelines in these instances.

July 1, 2018).  Consistent with this new law, in 2019, the

defendant conducted a self-evaluation of all bargaining unit

positions at DPH to determine whether there existed any

impermissible pay disparities under MEPA among employees of

different genders performing comparable work.  At this time, HRD

circulated a ten-page document detailing the timeframes and

guidelines according to which a self-evaluation was to proceed.[4]

"This self-evaluation consisted of an initial, high-level review

performed by HRD, followed by a more detailed review conducted

[by the defendant and other agencies] when the high-level review

showed that employees of different genders, who may be in

---

[4] The HRD self-evaluation guidelines provided, inter alia, that between October 18 and November 5, 2019, HRD would perform a preliminary analysis using aggregated data to identify employees for agency review; by November 6, 2019, the Executive Office of Health and Human Services (EOHHS), "the Secretariat within which [the defendant] sits and which has the ultimate authority with respect to [the defendant's] hiring decisions," would send out communications and HRD spreadsheets to agencies (including the defendant); between November 6 and November 25, 2019, agencies (including the defendant) would conduct their self-evaluation; by November 25, 2019, the defendant and other EOHHS agencies would send their "[s]elf-[e]valuation spreadsheets" to the classification and compensation unit at EOHHS; between November 25 and December 2, 2019, EOHHS human resources would review these spreadsheets and submit them to HRD for review; between December 2 and December 11, 2019, HRD would review the self-evaluation spreadsheets and compile data; and by December 12, 2019, HRD would provide a report to the Executive Office of Administration & Finance.

comparable jobs, were being paid differently."[5]  The defendant's
self-evaluation revealed seven persons[6] employed by the defendant
who were subject to potentially impermissible pay disparities,
and as a result of the self-evaluation, these employees'
salaries were adjusted upwards.  The defendant's MEPA self-
evaluation did not find any impermissible pay disparities
between the plaintiff and any of the male CO IIIs in BORN.

3.  The plaintiff's complaint.  On June 22, 2020, the
plaintiff filed a complaint in the Superior Court alleging
violations of MEPA and G. L. c. 151B.  The defendant filed an
answer and asserted various affirmative defenses, including the
affirmative defense set forth in G. L. c. 149, § 105A (d), to
claims brought under G. L. c. 149, § 105A (b), and G. L.
c. 151B, § 4.  The defendant subsequently moved for summary
judgment and, following a hearing, a Superior Court judge

---

[5] The plaintiff admitted for purposes of summary judgment
that the self-evaluation project undertaken by HRD and
Commonwealth agencies was supposed to have been conducted in the
fashion described in note 4, supra, but disputed that the
project "identified all employees of different genders in
comparable jobs subject to a pay discrepancy."

[6] The defendant initially identified eight employees who may
have been subject to impermissible pay disparities but
subsequently determined that one of the individuals had been
receiving the correct salary and thus removed that employee from
the list.

5

(motion judge) determined that the defendant was entitled to the affirmative defense outlined in MEPA and allowed the motion.

Discussion.  We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, "all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted).  Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018).  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  See also Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

G. L. c. 149, § 105A (d), provides in relevant part:

> "An employer against whom an action is brought alleging a
> violation of subsection (b) and who, within the previous 3
> years and prior to the commencement of the action, has both
> completed a self-evaluation of its pay practices in good
> faith and can demonstrate that reasonable progress has been
> made towards eliminating wage differentials based on gender
> for comparable work, if any, in accordance with that
> evaluation, shall have an affirmative defense to liability
> under subsection (b) and to any pay discrimination claim
> under section 4 of chapter 151B.  For purposes of this
> subsection, an employer's self-evaluation may be of the
> employer's own design, so long as it is reasonable in
> detail and scope in light of the size of the employer, or
> may be consistent with standard templates or forms issued
> by the attorney general."

Consistent with this provision, in November 2019, the defendant, in conjunction with extensive guidance from HRD, administered and completed the self-evaluation described, supra.  See note 4, supra.  As discussed above, that process involved an initial

high-level review by HRD, followed by a more detailed review conducted by the defendant, and ultimately, because of the MEPA self-evaluation, resulted in the identification of seven employees with potentially impermissible pay disparities, and an upward salary adjustment for those employees based on the salaries of comparable employees of different genders.

Here, the plaintiff does not dispute that the defendant conducted a self-evaluation of its pay practices in November 2019.  Rather, the plaintiff contends that the defendant's self-evaluation was not completed within three years of the present action; was not conducted in good faith; and did not demonstrate that reasonable progress had been made towards eliminating impermissible pay disparities.  The arguments are unavailing.

Initially, there is no merit to the plaintiff's claim that the self-evaluation was not completed within three years of the present action.  To the contrary, the summary judgment record, including but not limited to e-mail correspondence, spreadsheets, HRD self-evaluation guidelines, and the affidavit of Carol Cormier,[7] a human resources business partner with EOHHS,

---

[7] The Cormier affidavit confirms, inter alia, that the defendant timely completed the self-evaluation.  We note that the plaintiff did not move to strike the Cormier affidavit, and did not file any countervailing affidavit.  See, e.g., Adams v. Schneider Elec. USA, 492 Mass. 271, 288 (2023) ("court must determine judgment as a matter of law based on all uncontested evidence, that is, evidence favoring the nonmovant and

7

demonstrates that the defendant's self-evaluation was completed by late November 2019, several months prior to, and within three years of, the filing of the present action on June 22, 2020. Indeed, on November 27, 2019, the defendant provided Veronica Gjino, the EOHHS director of classification and compensation, with a revised spreadsheet delineating the results of the defendant's self-evaluation. Furthermore, there is no admissible record evidence that supports the plaintiff's conclusory suggestion that the self-evaluation was not timely completed. The plaintiff insists that the deposition testimony of Gjino, the defendant's deposition designee pursuant to Mass. R. Civ. P. 30 (b) (6), as appearing in 489 Mass. 1401 (2022), created a dispute of material fact because Gjino was unable to "provide the date [the defendant] purportedly completed the self-evaluation." This argument fails for two independent reasons. First, Gjino was not provided adequate notice within the meaning of rule 30 (b) (6) that the MEPA self-evaluation was an area of inquiry at her deposition. Indeed, the rule 30 (b) (6) notice contains no reference to the "affirmative

_____

uncontradicted and unimpeached evidence favoring the movant. Uncontradicted and unimpeached evidence, even from interested witnesses favoring the moving party, is to be considered on summary judgment" [quotations omitted]). See generally Stetson v. Board of Selectmen of Carlisle, 369 Mass. 755, 763 n.12 (1976) (judge may consider even faulty affidavits if no motion to strike).

8

defense" or to any "self-evaluation" under MEPA.[8]  See Mass. R. Civ. P. 30 (b) (6) (requiring that notice under rule "must describe with reasonable particularity the matters for examination").  See also Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep't of Mental Retardation, 424 Mass. 430, 461 n.30 (1997).  Second, Gjino's deposition testimony did not conflict with other evidence in the summary judgment record showing that the defendant had completed the self-evaluation.[9]

Next, the summary judgment record, including the HRD guidelines, e-mail correspondence, spreadsheets, and the Cormier affidavit, demonstrates that the defendant's self-evaluation was

---

[8] The references in the rule 30 (b) (6) notice to the plaintiff's requests for a pay equity review and to "[a]ny and all pay equity review requests made to DPH and/or BORN" by their plain language do not provide notice or describe with reasonable particularity anything relating to the affirmative defense or self-evaluation under MEPA.  Indeed, the plaintiff's "pay equity request" refers to a review specific to the plaintiff, whereas the MEPA self-evaluation pertains to an agency-wide review of pay equity.

[9] The plaintiff claims that in her deposition testimony, Gjino contradicted the Cormier affidavit by confirming that the defendant had not completed its review by November 26, 2019.  This is not the case.  Rather, Gjino merely agreed that "it seems implied" that an e-mail attachment containing the names of the eight individuals initially identified by the MEPA self-evaluation review, see note 6, supra, "was not [the defendant's] final version," of the attachment, but that she "cannot confirm that."  Again, viewed in context, Gjino's deposition testimony does not contradict the Cormier affidavit or other evidence in the summary judgment record.

9

made in good faith.[10]  Here again, the plaintiff's conclusory denials do not constitute a sufficient basis to avoid summary judgment.  See Halbach v. Normandy Real Estate Partners, 90 Mass. App. Ct. 669, 670-671 (2016).  We further note, in this regard, that in response to interrogatory 16, which asks the plaintiff to "describe in detail each and every basis for [the plaintiff's] contention" that the defendant's "'self-evaluation of its pay practices' does not constitute or qualify as an affirmative defense under G. L. c. 149, § 105A," the plaintiff objected and further responded that "discovery is ongoing" and

---

[10] The Office of the Attorney General has promulgated guidance regarding the amendments to G. L. c. 149, § 105A.  See Office of the Attorney General, An Act to Establish Pay Equity: Overview and Frequently Asked Questions (updated March 1, 2018), www.mass.gov/files/documents/2018/05/02/AGO%20Equal%20Pay%20Act%20Guidance%20%285-2-18%29.pdf.  This guidance includes an explanation of what constitutes a good faith self-evaluation.  See id. at § 10 ("A good faith self-evaluation is one that an employer conducts in a genuine attempt to identify any unlawful pay disparities among employees performing comparable work.  This good faith requirement applies to both an employer's analysis of which jobs are comparable and to its analysis of pay differentials.  A self-evaluation that is conducted so as to achieve certain pre-determined results [i.e., to find no disparities] or to justify known disparities likely will not qualify as good faith").  See also Garcia v. Steele, 492 Mass. 322, 326 (2023) ("It is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning" [quotations and citation omitted]); Black's Law Dictionary 832 (12th ed. 2024) ("good faith" is "state of mind consisting in . . . honesty in belief or purpose, . . . faithfulness to one's duty or obligation, . . . [or] absence of intent to defraud or to seek unconscionable advantage").

reserved the right to supplement or amend her answers to "this interrogatory."  There is no indication that the plaintiff did so.  Thus, we are left with a record on which the plaintiff declined or otherwise failed to present evidence or provide a substantive response explaining how and why the MEPA affirmative defense did not apply to the present circumstances.  Where the plaintiff has not produced evidence sufficient to create a genuine dispute of material fact regarding the good faith element of the affirmative defense, we discern no error in the entry of summary judgment.  See Le Fort Enters., Inc. v. Lantern 18, LLC, 491 Mass. 144, 149 (2023) (nonmoving party required to produce evidence sufficient to create genuine dispute of material fact).[11]

Finally, the summary judgment record contains abundant evidence supporting the defendant's contention that it made reasonable progress towards eliminating wage differentials based on gender as a result of the self-evaluation.  This evidence includes the conducting and completion of the process delineated by HRD and implemented by and within HRD, EOHHS, and the

---

[11] So far as the summary judgment record before us shows, discovery in the present case focused on the underlying claims of discrimination and MEPA violation, and not on the affirmative defense provided under G. L. c. 149, § 105A (d).  On a different record the applicability of this affirmative defense might well be in dispute.  However, we are limited to the record before us.

11

defendant; the identifying of the seven individuals who were subjected to potentially impermissible pay disparities; and the upward salary adjustment for those individuals to correct those potentially impermissible pay disparities.  To counter this evidence, the plaintiff again cites to the Gjino deposition wherein Gjino testified to the effect that she was unsure whether the defendant had ever rectified the salary discrepancies, and if so, when that occurred.  This argument fails.  As discussed supra, the MEPA affirmative defense and self-evaluation were not topics for which notice was provided under rule 30 (b) (6).  Furthermore, Gjino's testimony merely described her lack of knowledge, and did not contradict other undisputed evidence in the summary judgment record demonstrating that the salary adjustments had indeed occurred.

In short, the defendant satisfied its burden of showing that within the previous three years and prior to the commencement of the present action, it had completed a self-evaluation of its pay practices in good faith and demonstrated that "reasonable progress has been made towards eliminating wage differentials based on gender for comparable work, if any, in accordance with that evaluation."  G. L. c. 149, § 105A (d).[12]

_____

[12] Where we affirm the allowance of summary judgment on the application of the MEPA affirmative defense, we do not reach the

Therefore, summary judgment properly entered for the defendant.[13],[14]

Judgment affirmed.

By the Court (Neyman,
Ditkoff & Englander, JJ.[15]),

*Paul Little*

Clerk

Entered:  December 31, 2025.

---

underlying substantive claim regarding the plaintiff's pay disparity.

[13] The plaintiff's request for attorney's fees is denied.

[14] We acknowledge the amicus brief filed by the Massachusetts Employment Lawyers Association and the Women's Bar Association of Massachusetts.

[15] The panelists are listed in order of seniority.